COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bumgardner and McClanahan
Argued by teleconference


ROBERT L. WATTS, SR.
                                        OPINION BY
v.   Record No. 2983-02-2      JUDGE ELIZABETH A. McCLANAHAN
                                       AUGUST 5, 2003
P & J HAULING, INC. AND
 CONTINENTAL CASUALTY COMPANY


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Stephen T. Harper (Kerns, Kastenbaum &
            Reinhardt, P.L.C., on brief), for
            appellant.

            Warren H. Britt (Warren H. Britt, P.C.,
            on brief), for appellees.


     Robert L. Watts, Sr. (claimant) appeals a decision of the

Virginia Workers' Compensation Commission denying his claim for

temporary total disability benefits from June 25, 2001 through

September 12, 2001, and from October 18, 2001 through February

25, 2002.  Claimant complains that the commission erred in

holding (1) that the evidence was insufficient to establish a de

facto award, and (2) that the claimant was required to prove he

adequately marketed his residual work capacity during the June

through September and October through February time periods.

For the reasons that follow, we affirm the decision of the

commission.

I. Background

Claimant began working as a truck driver for P & J Hauling, Inc. (employer) in April 2001. On April 23, 2001, while adjusting a tarp arm on a tractor-trailer truck, he suffered an accidental injury to his shoulders and right elbow. However, he continued to work for employer until June 25, 2001, when he was treated for his injury by Dr. Thorp J. Davis. Dr. Davis found injury to both shoulders and contusion of the right elbow, but released claimant to light-duty work. On October 17, 2001, claimant made a return visit to Dr. Davis, who indicated on a work status form that claimant was capable of light/medium duty work. During the week of November 24, 2001, claimant worked for employer. After several more visits to doctors in December 2001, January, and February 2002, on February 26, 2002, claimant underwent surgery for a distal clavicle excision.

Starting on June 25, 2001, employer began making voluntary payments based on an average weekly wage of $482.23 and continued those payments through February 21, 2002. On September 4, 2001, claimant filed a Claim for Benefits for accidental injury, seeking total temporary disability benefits beginning June 25, 2001 and continuing, as well as medical benefits. In a letter attached to his Claim for Benefits, claimant disagreed with employer's calculation of his average weekly wage.

The employer's insurer sent claimant an Agreement to Pay Benefits (formerly called a "Memorandum of Agreement") executed by insurer on September 11, 2001.  The agreement form reflected that employer would pay temporary total disability benefits based on the employer's average weekly wage calculation of $482.23.  An enclosed letter requested claimant to sign the form and return it so it could be filed with the commission.  Claimant refused to endorse the agreement because of his dispute with employer's average weekly wage calculation.  On February 5, 2002, claimant's attorney filed a new claim for benefits form, alleging an average weekly wage of $600, and requesting a hearing.  About seven months after the insurer sent the agreement, claimant signed the agreement form and forwarded it to insurer on April 15, 2002; however, the agreement was never filed with the commission.

The matter went to hearing before Deputy Commissioner Stevick on May 17, 2002.  The parties stipulated before the commission that:  (1) claimant suffered a compensable injury by accident; (2) claimant was released to light duty on June 25, 2001, and again on October 18, 2001; (3) voluntary payments were made between June 25, 2001 and February 21, 2002, totaling $11,114.02 based on an average weekly wage of $482.23; (4) claimant was totally disabled between September 13, 2001 and October 17, 2001, and February 26, 2002 and continuing; (5) an agreement to pay benefits was sent to claimant on September 11,

2001 and returned to insurer on April 15, 2002, but not submitted to the commission; (6) claimant worked for employer the week of November 24, 2001, earning $209.34; and, (7) claimant did not market his residual capacity.

By opinion dated May 29, 2002, the deputy commissioner found that claimant's benefits should have been based on an average weekly wage of $513.46. She also found that claimant was totally disabled for the periods stipulated to, September 13, 2001 through October 17, 2001, and February 26, 2002 and continuing. However, during the remaining periods, because claimant was released to light-duty work, and because the evidence failed to support a finding of a de facto award, claimant was obligated to market his residual capacity. Therefore, the deputy commissioner denied benefits for those remaining periods, except for the week claimant worked for employer. The deputy commissioner also found that employer was entitled to a credit for benefits paid.

On appeal by claimant, the commission affirmed the decision of the deputy commissioner, finding that no de facto award could be recognized in the case and that where no award had been made, claimant is under a continuing duty to market his residual work capacity.

- 4 -

## II.  Analysis

In accordance with well established principles, we consider the evidence in the light most favorable to the party prevailing below.  States Roofing Corp. v. Bush Constr. Corp., 15 Va. App. 613, 616, 426 S.E.2d 124, 126 (1993).  "Factual findings of the commission that are supported by credible evidence are conclusive and binding upon this Court on appeal."  So. Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993).  The commission's findings, if supported by credible evidence or reasonable inferences drawn from the evidence, will not be disturbed upon review, even though the record may contain evidence to support a contrary finding.  Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986).

The Virginia Workers' Compensation Act encourages the voluntary settlement of claims arising from compensable injuries.  Code § 65.2-701(A) reads, in pertinent part:

> If after injury . . . the employer and the injured employee . . . reach an agreement for compensation or in compromise of a claim for compensation under this title, a memorandum of agreement in the form prescribed by the Commission shall be filed with the Commission.  The agreement may be prepared by the employee, the employer or the compensation carrier.

The statute also provides that an employer or insurer who fails to file such agreement with the commission within fourteen days of the date of its complete written execution may be subject to

- 5 -

a fine and sanctions.  Code § 65.2-701(B). It also reiterates the policy to encourage such agreements, "so long as the amount of compensation and time and manner of payment are approved by the Commission."  Code § 65.2-701(C).

In this case, after claimant sought medical treatment for his injury, employer began making voluntary payments to claimant, agreeing the claim was compensable.  Two months later, employer's insurer prepared and executed an agreement form and sent the form to claimant along with a letter requesting claimant to sign and return the form so it could be filed with the commission.  Claimant did not immediately return the agreement, and he filed a request for hearing because he disagreed with the employer's average weekly wage calculation. While Code § 65.2-701 requires an employer to file an agreement form within fourteen days of its complete written execution, nothing in the statute suggests that the parties are deemed to have entered into an agreement if the employer agrees to compensability and makes voluntary payments to a claimant, even though the parties disagree as to the amount of compensation. In fact, the Act recognizes that, along with time and manner of payment, the amount of compensation is important to approval of a settlement.  See Code § 65.2-701(A) ("agreement for compensation"), and Code § 65.2-701(C) ("amount of compensation").

Contrary to claimant's contention, he was not forced to sign the agreement form executed by employer to his detriment if he disputed such proposed agreement. First, the statute allows an "employee, the employer or the compensation carrier" to prepare an agreement. Second, if a claimant signs an agreement with which he later disagrees, he may withdraw from the agreement prior to its approval. Furthermore, any award that would have been premised on the agreement will not be entered, and the case will be scheduled for hearing. Code § 65.2-702. At hearing, a claimant is entitled to present evidence on the average weekly wage calculation. In this case, claimant was provided an opportunity to present evidence to dispute employer's average weekly wage calculation, and the average weekly wage calculation was modified. Third, an award is subject to modification upon the grounds of fraud, misrepresentation, mistake or imposition. John Driggs Co. v. Somers, 228 Va. 729, 324 S.E.2d 694 (1985); Harris v. Diamond Constr. Co., 184 Va. 711, 36 S.E.2d 573 (1946). The commission has liberally corrected awards that were based upon an incorrect average weekly wage calculation on the grounds of imposition or mistake of fact, whether mutual or unilateral. Collins v. Dep't of Alcoholic Bev. Control, 21 Va. App. 671, 680, 467 S.E.2d 279, 283, aff'd en banc, 22 Va. App. 625, 472 S.E.2d 287 (1996).

Claimant contends that the evidence supports a finding of a de facto award because the parties stipulated that there was a

compensable injury by accident and that employer made voluntary payments to claimant for a substantial period of time without filing the agreement with the commission as required by statute. De facto awards of compensation were first affirmed in Nat'l Linen Serv. v. McGuinn, 5 Va. App. 265, 362 S.E.2d 187 (1987) (en banc). McGuinn was premised on a finding that the employer was clearly attempting to frustrate the purpose behind Code § 65.1-93, recodified in 1991 as Code § 65.2-701, which encourages voluntary execution and filing of settlements between an employer and an injured employee. McGuinn, 5 Va. App. at 270, 362 S.E.2d at 189-90. McGuinn was also premised on the fact that the statute did not explicitly provide penalties for an employer's failure to comply with its provisions. Id. at 270, 362 S.E.2d at 189. Two years after the McGuinn decision, in 1989, a penalty was added to the statute by the General Assembly. In 1991, the legislature again amended the language of the statute to allow an employee, an employer, or a compensation carrier to prepare the memorandum of their agreement.

In this case, there was no evidence that the employer was attempting to manipulate itself into a more favorable position while at the same time accepting the claim in practical terms. The record indicates that claimant and employer had a dispute about the amount of the average weekly wage. Thus, the facts of this case are not analogous to those of McGuinn.

The parties here stipulated to the compensability of the injury, but the amount of compensation clearly remained in dispute.  Even after claimant signed and returned the agreement form, he continued to dispute employer's average weekly wage calculation up to and at the hearing.  Credible evidence in the record supports the commission's finding that the parties never reached agreement as to the amount of compensation.  Therefore, the commission did not err in holding that claimant was not entitled to a de facto award in this case.

Employer asserted a defense that claimant was required to market his residual work capacity before he is entitled to temporary total disability benefits.  A partially incapacitated employee, absent an award from the commission, is not entitled to temporary total disability benefits unless he has made a reasonable effort to market his remaining capacity for work. Washington Metro. Area Transit Auth. v. Harrison, 228 Va. 598, 600-01, 324 S.E.2d 654, 655-56 (1985); Pocahontas Fuel Co. v. Agee, 201 Va. 678, 112 S.E.2d 835 (1960); Pocahontas Fuel Co. v. Barbour, 201 Va. 682, 112 S.E.2d 904 (1960).  The parties stipulated that claimant was released to light duty on June 25, 2001, and again on October 18, 2002, and that claimant was totally disabled between September 13, 2001 and October 17, 2001, and February 26, 2002 and continuing.  Claimant also stipulated that he did not market his remaining capacity for

work and that he had worked the week of November 24, 2001 for employer.

Claimant argues that even if a de facto award is not found, he should not be required to market his residual capacity because the employer accepted that his claim was compensable. Even though employer began making voluntary payments, claimant was not under an award, and he could not reasonably rely upon employer's voluntary payments to avoid his requirement to market. Washington Metro. Area Transit Auth., 228 Va. at 601, 324 S.E.2d at 656. An employer's voluntary payment of compensation or disability benefits does not waive its right to assert defenses, absent fraud or concealment. Stuart Circle Hosp. v. Alderson, 223 Va. 205, 288 S.E.2d 445 (1982).

The claimant stipulated that he had been put on light-duty work. No evidence indicates he was prevented from marketing his residual capacity. Thus, because there was no award, and because the facts do not support a finding of a de facto award, the claimant was under a duty to market his residual work capacity. Accordingly, the decision of the commission is affirmed.

Affirmed.