PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Petty and Chafin
Argued at Lexington, Virginia

ADVANCE AUTO AND INDEMNITY INSURANCE
 COMPANY OF NORTH AMERICA

                                                             OPINION BY
v.      Record No. 2049-13-3                    JUDGE TERESA M. CHAFIN
                                                             JUNE 24, 2014

BRENDA LEE CRAFT

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

J. Derek Turrietta (W. Russell Himes; Stackhouse, Nexsen &
Turrietta, on briefs), for appellant.

Kerry S. Hay for appellee.

Advance Auto and Indemnity Insurance Company of North America (referred to

collectively as "the employer") appeal a decision of the Virginia Workers' Compensation

Commission ("the commission") awarding Brenda Lee Craft ("Craft") benefits for cervical and

thoracic spinal injuries resulting from an accident at work.  On appeal, the employer argues that

the commission erred by concluding that Craft's claim for benefits was not barred by the

principles of res judicata outlined in Starbucks Coffee Co. v. Shy, 61 Va. App. 229, 734 S.E.2d

683 (2012).  The employer also contends that the commission erred in finding that Craft injured

her spine through her work-related accident and that medical treatment of Craft's spinal injuries

was necessary.  For the reasons that follow, we disagree with the employer's arguments and

affirm the commission's decision.

I.  BACKGROUND

On appeal, this Court views the evidence in the light most favorable to Craft, the

prevailing party below.  See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390

S.E.2d 788, 788 (1990).  So viewed, the evidence established that Craft sustained an injury at work on September 13, 2009, while removing a set of rotors from a shelf above her head.  When she lifted the rotors from the shelf, Craft felt a "pull" in her left shoulder and left scapular region.  Craft notified the employer of her injury and sought medical treatment.

## A.  CRAFT'S MEDICAL TREATMENT AND DIAGNOSIS

Craft visited her family practitioner, Dr. Mario Hernandez, on the day after the accident for treatment concerning pain in her neck.  She returned to Dr. Hernandez's office two days later complaining of neck pain radiating into her left shoulder and numbness and tingling in her left hand.  Dr. Hernandez noted that Craft had previously undergone a cervical fusion of the C5-7 vertebrae, and referred her for an MRI of her cervical spine and a neurosurgery evaluation.  On September 18, 2009, Craft underwent an MRI of her cervical spine.  Dr. Kelly Cassedy compared the results of this MRI to a previous CT scan post myelogram from February 25, 2005.  The MRI showed a new left lateral recess disc extrusion at C7-T1 and left C8 nerve root compression.

On September 21, 2009, Craft was treated by April Stidham, family nurse practitioner for Dr. Souhail Shamiyeh.  During this visit, Craft was diagnosed with a work-related neck injury.  The notes from this visit discussed Craft's September 13, 2009 work accident and her subsequent MRI revealing a new disc extrusion at C7-T1.  Additionally, Craft was treated at Stone Mountain Health Services on October 9, 2009.  The chart notes from that visit discussed her work accident and the new left lateral recess disc extrusion from C6-T1 depicted by the most recent MRI of her cervical spine.

Craft was treated by Dr. Ken Smith, neurosurgeon, on October 19, 2009.  Dr. Smith examined Craft and noted her history of cervical difficulties and her prior cervical fusion.  He noted that after the prior fusion surgery Craft had "progressed quite well with complete

resolution of the neck and upper extremity pain and resumed her usual activities without difficulty." Dr. Smith linked the September 13, 2009 work accident with the development of neck and left trapezial and scapular pain, and noted Craft's difficulty with the range of motion in her cervical spine and her hand numbness. Dr. Smith's examination revealed moderate cervical paraspinous muscle contractions and tenderness of the cervical spine. He diagnosed Craft with cervical herniated nucleus pulposus without myelopathy, cervical spondylosis without myelopathy, cervical degenerative disc disease, cervical radiculopathy, and neck pain. Dr. Smith recommended structured physical therapy and medication management.

Craft returned to Dr. Smith on November 30, 2009, complaining of persistent cervical and left upper extremity pain. Dr. Smith reviewed the cervical MRI from September 18, 2009, and noted the disc extrusion at C7-T1. Dr. Smith recommended continuing physical therapy and referred Craft to Dr. William M. Platt, physiatrist, for a pain clinic evaluation for cervical epidural steroid injections and treatment of cervical pain.

Dr. Platt first examined Craft on December 14, 2009. He recorded the history of her work accident and the C7-T1 disc protrusion. Dr. Platt assessed an acute work-related neck injury with left upper extremity cervical brachial radiculitis with C7-T1 disc protrusion. He also diagnosed fibromyalgia, cervical degenerative disc disease, cervical brachial radiculitis, and cervical post-laminectomy syndrome.

On February 1, 2010, Craft was evaluated by Dr. Joshua H. Dalton, osteopath. Craft reported left shoulder pain following the September 13, 2009 work accident that radiated into her upper arm and neck, and weakness and numbness in those areas. On examination, Craft's strength in her upper extremities was 5/5. Dr. Dalton reviewed Craft's medical records and composed a letter documenting his opinions. Although Dr. Dalton diagnosed shoulder pain, he concluded that Craft's normal range of motion, reflexes, strength, and lack of muscle atrophy did

not correlate with a nerve root compression at C8. Dr. Dalton opined that the only information in the record supporting a causal relationship between the accident and the alleged injuries was the September 18, 2009 MRI showing a new left lateral recess disc extrusion at C7-T1 with C8 nerve root compression. While Dr. Dalton admitted the MRI indicated "that some change had occurred" between the September 18, 2009 MRI and the February 25, 2005 CT scan, he stated that the MRI failed to indicate what caused this change. Dr. Dalton further noted that Craft's medical history contained pre-existing conditions, including a motor vehicle accident, a cervical fusion, and fibromyalgia, which could have impacted her current condition.

Craft underwent another CT scan post myelogram on July 27, 2010. This scan revealed that the left lateral foraminal herniation at C7-T1 had diminished in size and that the herniation abutted but did not definitively compress the left C8 nerve root. On October 11, 2010, Dr. Platt noted that Craft had undergone a series of cervical epidural injections and was using a TENS unit to control her pain and that she wanted to avoid another cervical fusion. Dr. Platt opined that Craft was nearing maximum medical improvement.

Craft was treated by Dr. David A. Wiles, neurosurgeon, on May 20, 2010, on referral from Dr. Shamiyeh. Dr. Wiles diagnosed C8 radiculopathy on the left and a C7-T1 herniated disc on the left. He opined that "[w]ith respect to causality, if [Craft's] history is reasonably correct, one would have to assume that the work-related injury from 9-13-09 was a direct cause of the herniated disc since [she] was asymptomatic prior to this injury."

Dr. Dalton examined Craft again on May 5, 2011. He reported that her condition had worsened due to objective texture changes, marked inflammatory changes, and a restricted range of motion in the cervicothoracic region, with specific somatic dysfunction at C3 and T1. He opined that Craft had work-related radiculopathy and somatic dysfunction and agreed with Dr. Platt's work-related restrictions. Dr. Dalton did not recommend further medical treatment in

his specialty and opined that Craft had reached maximum medical improvement with the exception of surgical intervention.

By letter dated December 6, 2011, Dr. Shamiyeh indicated that he had reviewed the September 18, 2009 MRI and Dr. Smith's records through August 9, 2010. Dr. Shamiyeh agreed that Craft's work accident "resulted in a mechanical change" to her neck "causing the disc herniation at C7-T1." Further, he opined that her disability was, at least in part, caused by this disc herniation.

## B. PROCEDURAL HISTORY OF THE CASE

On November 9, 2009, Craft entered into an award agreement with the employer before she filed a formal claim for benefits with the commission.[1] This agreement listed her injuries as "left shoulder possible C8 nerve root compression," and provided for the payment of temporary total disability benefits. The agreement was filed with the commission for its approval on November 13, 2009, and the commission issued an award order on December 4, 2009 accepting the agreement and awarding lifetime medical benefits to Craft. Like the award agreement, the award order listed Craft's "left shoulder possible C8 nerve root compression" as the "body parts injured during [her] workplace injury of September 13, 2009." Although the award order informed Craft of her right to appeal the commission's decision within twenty days, neither she nor the employer appealed the decision.

---

[1] Craft filed her initial claim for benefits with the commission shortly after reaching this agreement. Although Craft endorsed this claim on November 2, 2009 (the same day that she endorsed the award agreement with the employer), the claim was not filed with the commission until January 5, 2010. Thus, Craft's initial claim for benefits was filed after she entered into the award agreement with the employer and after the terms of that agreement were incorporated into the commission's December 4, 2009 award order. Furthermore, this claim did not address Craft's spinal injuries at issue in the present case. While the claim referred to an "attach[ed] copy" to list the body parts that Craft injured in her work accident, the only document attached to this claim displayed copies of Craft's pay stubs from Advance Stores Co. and Lee County Schools, for whom Craft was employed as a contract bus driver.

On September 12, 2011, Craft filed a claim for benefits concerning her cervical and thoracic spinal injuries. Specifically, Craft requested to amend the "nature of [her] injury to include [the] cervical and thoracic spine" and requested temporary total disability benefits and lifetime medical benefits. Commissioner Dudley, who sat by designation under Code § 65.2-704(A), accepted the parties' request to have the matter decided on the record. Both parties submitted written statements concerning the matter. The employer defended the claim by arguing that the commission lacked jurisdiction to hear Craft's claim. The employer argued that the December 4, 2009 award order was a final order in the case and that Craft waived her right to file a claim based on additional injuries not included in that order when she failed to timely appeal the commission's decision or otherwise except those injuries from the order. The employer also argued that Craft failed to prove a change in her condition or that her spinal injuries were caused by her work accident. Additionally, the employer argued that further medical treatment of Craft's spinal injuries was unnecessary.

On September 19, 2012, Commissioner Dudley determined that (1) the commission possessed the jurisdictional authority to hear Craft's claim regarding the injuries to her cervical and thoracic spine; (2) Craft suffered injuries to her cervical and thoracic spine in the September 13, 2009 work accident; and (3) medical treatment was necessary for Craft's cervical and thoracic spinal injuries. In addressing the employer's argument that the commission lacked jurisdiction to hear Craft's claim, Commissioner Dudley placed emphasis on the fact that Craft entered into the initial agreement with the employer before she actually filed a claim with the commission. Commissioner Dudley held that as Craft's claim was initiated by agreement of the parties before she filed a claim with the commission, "there was nothing for her to waive, abandon, or merge with the November 9, 2009 agreement" or the December 4, 2009 award order.

- 6 -

The employer requested a review of Commissioner Dudley's decision by the full commission. On September 23, 2013, the commission unanimously affirmed the decision.[2] Like Commissioner Dudley, the full commission placed emphasis on the fact that Craft had not filed a claim before she entered into the agreement. The commission reasoned that "[t]he parties did not fail to mention or address a previously filed claim . . . [because] there was no claim." The commission held that Craft "did not waive her rights by signing the agreement and the doctrine of res judicata does not preclude a claim to add additional injuries sustained as a result of a compensable accident." The commission addressed several policy considerations supporting this conclusion, including the efficient administration of the Virginia Workers' Compensation Act, the encouragement of the voluntary settlement of claims, and the protection of injured employees that may lack bargaining power at the time of the initial agreement due to their incapacity to work and strained economic circumstances. The commission also held that Craft's spinal injuries resulted from her September 13, 2009 work accident and noted that the mechanism of her injury was consistent with a cervical injury. The commission further held that the employer's argument concerning the necessity of additional medical treatment of Craft's spinal injuries was without merit. The employer appealed the commission's decision to this Court.

## II. ANALYSIS

Upon reviewing the record and the authority addressing the issues presented on appeal, we find that the employer's assignments of error are without merit. Craft's claim for benefits resulting from her cervical and thoracic spinal injuries was not barred by the principles of res judicata or the statute of limitations. Further, the commission's decision that Craft's spinal injuries were caused by her September 13, 2009 work accident was supported by credible

---

[2] Commissioner Dudley retired before the full commission reviewed this matter.

medical evidence. Additionally, credible evidence supported the commission's decision that Craft's spinal injuries required further medical treatment.

## A.  CRAFT'S CLAIM CONCERNING HER SPINAL INJURIES WAS NOT BARRED BY THE PRINCIPLES OF RES JUDICATA

On appeal, the employer contends that the December 4, 2009 award order was a final order barring Craft's claim for further benefits. The employer argues that Craft waived her right to file other claims based on injuries not included in the award order when she failed to timely appeal the commission's decision or otherwise except any additional injuries from the order. The employer claims that the principles of res judicata prohibit the commission from considering Craft's claim for her spinal injuries.

"The determination of res judicata is a question of law and is reviewed *de novo*." Pruden v. Plasser Am. Corp., 45 Va. App. 566, 573, 612 S.E.2d 738, 742 (2005). While we review questions of law *de novo*, we construe the Workers' Compensation Act liberally for the benefit of employees to effectuate its remedial purpose of making injured workers whole. See Fairfax Cnty. Sch. Bd. v. Humphrey, 41 Va. App. 147, 154-55, 583 S.E.2d 65, 68 (2003). We also "give great weight to the commission's construction of the Act." Id. at 155, 583 S.E.2d at 68-69 (citation omitted).

"[R]es judicata is a judicially created doctrine resting upon public policy considerations which favor certainty in the establishment of legal relations, demand an end to litigation, and seek to prevent harassment of parties." K&L Trucking Co. v. Thurber, 1 Va. App. 213, 219, 337 S.E.2d 299, 302 (1985).

> [T]he principles of res judicata can be comprised of two distinct concepts: "issue preclusion" and "claim preclusion." See Brock v. Voith Siemens Hydro Power Generation, 59 Va. App. 39, 45, 716 S.E.2d 485, 487 (2011). "Issue preclusion bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Id. (quoting

New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001)). In contrast, claim preclusion "'foreclos[es] litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.'" Nottingham v. Weld, 237 Va. 416, 419 n.2, 377 S.E.2d 621, 622 n.2 (1989) (quoting Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75, 77 n.1 (1984)).

Shy, 61 Va. App. at 241, 734 S.E.2d at 689. "[C]laim preclusion treats unasserted claims as being subsumed into the disposition of related, previously adjudicated, claims arising out of the same cause of action." Brock, 59 Va. App. at 45, 716 S.E.2d at 488 (citing Restatement (Second) of Judgments §§ 18, 19 (1982)). Thus, the "'effect of a final decree is not only to conclude the parties as to every question actually raised and decided, but as to every claim which properly belonged to the subject of litigation and which the parties, by exercise of reasonable diligence, might have raised at the time.'" Id. at 46, 716 S.E.2d at 488 (quoting Smith v. Holland, 124 Va. 663, 666, 98 S.E. 676, 677 (1919)).[3]

The principles of res judicata apply to workers' compensation cases. Id. at 47, 716 S.E.2d at 488. "'[T]he relationship of the [c]omission to an award is that of a court to a judgment . . . .'" Id. (quoting Thurber, 1 Va. App. at 219, 337 S.E.2d at 302). Thus, "a final award [from the commission] 'bars relitigation of the same cause of action, *or any part thereof which could have been litigated* between the same parties and their privies.'" Id. (emphasis in original). Likewise, "[a]n order by the commission awarding benefits to a claimant by agreement of the parties is a final determination of the matters which were actually, *or might have been*, litigated in that suit." Shy, 61 Va. App. at 240, 734 S.E.2d at 689 (emphasis added).

This Court addressed the doctrine of res judicata in the context of workers' compensation cases in Brock and Shy. In Brock, an employee alleged several injuries in his initial claim but failed to raise all of those injuries at his evidentiary hearing before the commission. See Brock,

---

[3] Claim preclusion has been referenced by this Court as a "could-have-litigated-should-have-litigated principle." See Brock, 59 Va. App. at 46, 716 S.E.2d at 488.

59 Va. App. at 42, 716 S.E.2d at 486. The commission awarded the employee benefits for the injuries he actually raised at the hearing and dismissed his claim. See id. Four months later, the employee filed a new claim requesting benefits for the injuries he failed to previously address before the commission. See id. at 43, 716 S.E.2d at 486. The commission applied the doctrine of res judicata to bar the employee's new claim. See id. at 44, 716 S.E.2d at 487. This Court affirmed the commission's decision on appeal, and noted that the deputy commissioner presiding over the initial evidentiary hearing specifically warned the employee of the necessity of addressing all of the issues raised by his claim. See id. at 49, 716 S.E.2d at 489-90. This Court held that "settled principles of res judicata . . . [barred the employee] from litigating matters he neglected to raise at his earlier evidentiary hearing." Id. at 49, 716 S.E.2d at 490. See also Thurber, 1 Va. App. at 218, 337 S.E.2d at 301 (res judicata prevented employee from presenting evidence that he procured selective employment from which he was discharged when he had "ample opportunity" to present this evidence at an earlier hearing).

In Shy, an employee filed a claim for benefits after an unsuccessful attempt to return to work following a work-related upper back injury. See Shy, 61 Va. App. at 234, 734 S.E.2d at 685-86. The parties entered into an award agreement concerning the employee's injury prior to her hearing before the commission. See id. at 234, 734 S.E.2d at 686. The commission approved the agreement and entered an award order reflecting its terms. See id. Several months later, the employer filed an application for a hearing before the commission requesting a termination of the employee's award on the ground that her attempted return to work constituted a change in her condition. See id. The commission held that the employer's request for review was barred by the award order under the principles of res judicata. See id. at 237-38, 734 S.E.2d at 687. The commission found that the employer had abandoned its claim to challenge the award based on the employee's attempted return to work because it was aware of this unsuccessful

work attempt prior to the execution of the award agreement. See id. This Court affirmed the commission's decision, finding that the award order was a final judgment that barred further review of the employee's award under the claim preclusion component of res judicata. See id. at 242-43, 734 S.E.2d at 689 (citing Brock, 59 Va. App. at 46, 716 S.E.2d at 488).

The present case is distinguishable from Brock and Shy due to its procedural history. In contrast to the employee in Shy, Craft had not yet filed a claim with the commission when she entered into the award agreement with the employer. Thus, there was no "contested matter before the commission" when the parties entered into the award agreement. See id. at 239, 734 S.E.2d at 688. Moreover, Craft had not presented her case to the commission for adjudication before it entered the award order. Unlike the employee in Brock, Craft had not yet put all of her injuries at issue before the commission or had the opportunity to advance her claims by presenting evidence of her injuries at an evidentiary hearing. See Brock, 59 Va. App. at 42-43, 716 S.E.2d at 486. As Craft had not filed a claim with the commission at the time of the award agreement and the subsequent entry of the award order, there were no claims pending with the commission that could later be barred by the principles of res judicata. Craft had not yet put her spinal injuries at issue before the commission, and therefore she cannot be deemed to have abandoned or otherwise waived those claims.

As noted by the commission, applying the principles of res judicata to bar Craft's claim would thwart several important public policy considerations relating to the Virginia Workers' Compensation Act. First, the Act "encourages the voluntary settlement of claims arising from compensable injuries." Watts v. P&J Hauling, Inc., 41 Va. App. 278, 283, 584 S.E.2d 457, 460 (2003); see also Code § 65.2-701(C) (the Act encourages settlements between the parties). Interpreting the principles of res judicata in the manner encouraged by the employer would undermine this goal. If res judicata applied to voluntary agreements entered before employees

actually filed claims, then employees would have to ensure that those agreements covered *all* of the potential injuries resulting from their work-related accidents. Voluntary agreements would essentially act as blanket releases concerning claims for unlisted injuries.[4] Employees would be barred by their pre-claim agreements from filing additional claims if other injuries were discovered at a later date. The increased diligence required by such an application of res judicata coupled with uncertain medical diagnoses and potentially latent injuries would discourage the voluntary settlement of claims in many cases. In turn, the efficient administration of the Act would be jeopardized as more claims would be fully litigated, even when the parties of the case were in agreement concerning some injuries involved in the claim.

Furthermore, the employer's suggested application of the principles of res judicata could lead to inequitable settlements that only partially compensate injured workers for their injuries. Injured employees lacking economic bargaining power due to their inability to work and earn wages could be forced by their circumstances to agree to awards that only provide compensation for some of their work-related injuries. Without agreeing to an award, these employees would have to fully litigate their claims, and they could be denied medical care and lost wages throughout the course of this litigation. Under such circumstances, employees would be more likely to abandon compensation for some injuries in favor of partial awards yielding immediate benefits that may not be in their long-term best interest.[5] These employees would be barred from

---

[4] Blanket releases are not favored by the commission and are reviewed with a high degree of scrutiny. See Chism v. Norfolk (City of) Utilities, No. 217-46-42 (Va. Workers' Comp. Comm'n March 3, 2005).

[5] The Supreme Court of Virginia has expressly addressed such a scenario in John Driggs Co. v. Somers, 228 Va. 729, 734-35, 324 S.E.2d 694, 697 (1985). Although we describe this hypothetical scenario to illustrate a potential inequitable outcome resulting from the employer's interpretation of the principles of res judicata, we note that the record does not contain any evidence of similar wrong-doing by the employer in this case.

We also note that Code § 65.2-701 requires the commission to approve award agreements only when they are in the best interests of the employee. See Code § 65.2-701(A). If res

- 12 -

bringing claims for additional benefits based on their uncompensated injuries under the application of res judicata advocated by the employer. The principles of res judicata should not be applied in a way that facilitates such inequitable results.

We hold that the principles of res judicata do not bar Craft's claim for benefits based on her spinal injuries under the circumstances of this case. Code § 65.2-601 requires a claim for benefits to be filed with the commission within two years of an employee's work-related accident. See Code § 65.2-601. Since Craft filed her claim for benefits concerning her spinal injuries within two years of her accident, she timely filed her claim within the period mandated by the relevant statute of limitations. Accordingly, the claim was properly before the commission and it had jurisdiction to award Craft the requested benefits.

### B. CRAFT'S INJURIES WERE CAUSED BY HER SEPTEMBER 13, 2009 WORK ACCIDENT

The employer argues that "the commission erred in finding that [Craft] sustained an injury to her thoracic and cervical spine in a work accident." The employer contends that Craft did not establish that the September 13, 2009 accident caused her spinal injuries.[6] We disagree. Credible medical evidence in the record supports the commission's decision that Craft's spinal injuries were caused by her work accident.

_____

judicata bars employees from bringing claims for additional injuries not included in initial award agreements, the commission will have to review awards in cases where multiple injuries are likely with increased scrutiny to ensure that injured employees have not waived future claims and that the award is actually in their best interests. This need for increased scrutiny will place further administrative demands on the commission.

[6] Initially, the employer frames its argument in the context of a review of an award based on a change in condition pursuant to Code § 65.2-708. The employer argues that Craft failed to establish a change in her physical condition that would justify a review of her award because her spinal injuries existed when the commission entered the initial award order. Craft's claim regarding her spinal injuries, however, was filed as an initial claim pursuant to Code § 65.2-601 rather than as a change in condition. Thus, Craft was not required to prove a change in her condition since the entry of the award order and the employer's reference to review based on a change in condition outlined in Code § 65.2-708 is misdirected.

- 13 -

"Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." Shy, 61 Va. App. at 238, 734 S.E.2d at 688 (quoting Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991)). Further, as previously stated, this Court views the evidence in the light most favorable to Craft as the prevailing party before the commission. See R.G. Moore Bldg. Corp., 10 Va. App. at 212, 390 S.E.2d at 788. "'If there is evidence, or reasonable inferences can be drawn from the evidence, to support the commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding.'" Amelia Sand Co. v. Ellyson, 43 Va. App. 406, 408, 598 S.E.2d 750, 751 (2004) (quoting Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986)). "The determination of causation is a factual finding that will be upheld on appeal if credible evidence supports the finding." Imperial Trash Serv. v. Dotson, 18 Va. App. 600, 603, 445 S.E.2d 716, 718 (1994).

In the present case, the evidence established that Craft was injured at work on September 13, 2009 when she removed a set of rotors from a shelf above her head.[7] Craft visited her family practitioner the next day complaining of neck and shoulder pain. On September 18, 2009, Craft underwent an MRI of her cervical spine that revealed a new left lateral recess disc extrusion at C7-T1 and left C8 nerve root compression. Although Craft had a history of problems with her cervical spine that included a prior cervical fusion, these issues had completely resolved according to the medical records. Craft was asymptomatic in relation to her prior cervical problems prior to her injury on September 13, 2009.

Four of Craft's physicians linked her neck pain and injuries to her September 13, 2009 work accident. Dr. Smith reported Craft's development of neck, left trapezial, and scapular pain and hand numbness following the accident. He also noted a decreased range of motion in Craft's

_____

[7] The commission noted that this "mechanism of injury is consistent with a cervical injury."

- 14 -

cervical spine and diagnosed her with cervical herniated nucleus pulposus without myelopathy, cervical spondylosis without myelopathy, cervical degenerative disc disease, cervical radiculopathy, and neck pain. Dr. Platt diagnosed an acute work-related neck injury and linked Craft's C7-T1 disc extrusion to the September 13, 2009 work accident. Dr. Wiles diagnosed a C7-T1 herniated disc on the left and opined that "[w]ith respect to causality, if [Craft's] history is reasonably correct, one would have to assume that *the work-related injury from 9-13-09 was a direct cause of the herniated disc* since [she] was asymptomatic prior to this injury." (Emphasis added). Likewise, Dr. Shamiyeh opined that Craft's work accident "resulted in a mechanical change" to her neck "causing the disc herniation at C7-T1" and that her disability was, at least in part, caused by this disc herniation.

On appeal, the employer places emphasis on Dr. Dalton's opinions. Dr. Dalton opined that the only correlation between the work accident and the cervical injuries was the MRI revealing the new disc extrusion. He stated that the MRI did not establish that the new disc extrusion was caused by the accident and that Craft's prior medical history could be impacting her cervical problems.

"[A] question raised by 'conflicting expert medical opinions' is 'one of fact' binding upon this Court on appeal." Southwest Va. Tire, Inc. v. Bryant, 31 Va. App. 655, 661-62, 525 S.E.2d 563, 566 (2000) (citation omitted). When medical expert opinions conflict, the commission must determine the probative weight to be accorded such evidence. See Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986). If the commission's resolution of conflicting expert opinions is based on credible evidence, then its decision is binding on this Court. See id. Here, the commission discounted Dr. Dalton's opinions and assigned greater weight to the opinions of the other four physicians linking Craft's spinal injuries to her work accident. The mechanism of Craft's accident, the timing of her

symptoms and the nature of her injuries, the MRI revealing the new disc extrusion, and the fact that Craft's prior cervical problems were asymptomatic prior to her injury support the commission's conclusion.

The commission's decision that Craft's spinal injuries were caused by her September 13, 2009 work accident is supported by credible evidence in the record. Four physicians linked Craft's cervical and thoracic spinal injuries to the accident, and radiographic evidence and the circumstances of the case support their conclusions. Thus, the commission did not err in reaching this decision.

### C. CRAFT'S SPINAL INJURIES REQUIRE FURTHER MEDICAL TREATMENT

The employer also argues that the commission erred by finding that the medical treatment of Craft's spinal injuries was necessary. The employer contends that Craft failed to establish the necessity of any further treatment pertaining to her spinal injuries. The employer does not focus this claim to any specific medical treatment, but rather argues that Craft has reached maximum medical improvement and requires no further treatment in general.

> Whether disputed medical treatment is compensable . . . presents a mixed question of law and fact, which this Court reviews *de novo*. "The services which an employer has to furnish under the Work[ers'] Compensation Act are necessary services incident to the treatment of an injury sustained in a compensable accident." Ins. Mgmt. Corp. of Tidewater/Baldwin Bros. & Taylor v. Daniels, 222 Va. 434, 439, 281 S.E.2d 847, 849 (1981). Subject to the commission's review, the employer is responsible for medical attention if 1) a causal relationship exists between the workplace accident and the treatment, and 2) the attending physician deems it necessary. The claimant, however, bears the burden of proving by a preponderance of the evidence that disputed treatment was medically necessary.

Haftsavar v. All Am. Carpet and Rugs, Inc., 59 Va. App. 593, 599, 721 S.E.2d 804, 807 (2012) (citations omitted).

- 16 -

As previously discussed, a causal relationship exists between Craft's September 13, 2009 work accident and her cervical and thoracic spinal injuries. Therefore, the employer is responsible for necessary medical treatment pertaining to those injuries. The employer, however, essentially argues that Craft's injuries will require no further treatment. The employer bases this position on a report from Dr. Dalton. In that report, Dr. Dalton did not recommend further medical treatment in his specialty and opined that Craft had reached maximum medical improvement with the exception of surgical intervention.

The employer's reliance on Dr. Dalton's report is flawed for several reasons. While Dr. Dalton opined that Craft did not require further medical treatment, his opinion only addressed medical treatment *within his specialty*, osteopathy. While Craft may not require further osteopathic manipulative treatment, other medical treatment could be necessary in the future. Additionally, Dr. Dalton opined that Craft had reached maximum medical improvement *with the exception of surgical intervention*. At the time of Dr. Dalton's report, Craft still experienced pain in her cervical region and she had discussed the possibility of surgery with her other physicians. Thus, surgical intervention could become necessary in the future. Further, Dr. Dalton diagnosed Craft with work-related radiculopathy and somatic dysfunction and agreed with Dr. Platt's work-related restrictions. These diagnoses and recommendations imply that Craft could require further medical treatment in the future.

Although Craft's need for future medical treatment requires speculation, it was reasonable for the commission to conclude that she could require additional medical treatment for her spinal injuries. Craft still experienced pain in her cervical region and had discussed surgery with her physicians. Further, Dr. Dalton's report is limited in its scope to treatment within his specialty. Accordingly, we conclude that the commission did not err in reaching its decision concerning the necessity of further medical treatment.

- 17 -

## III. CONCLUSION

In summary, we hold that the principles of res judicata do not bar Craft's claim for benefits concerning her cervical and thoracic spinal injuries. As that claim was timely filed with the commission, it had jurisdiction to award her benefits based on that claim. Additionally, we hold that credible evidence supported the commission's decision that Craft's September 13, 2009 work accident caused her spinal injuries. Further, we conclude that the commission did not err by finding that Craft's spinal injuries require additional treatment. For these reasons, we affirm the commission's decision.

Affirmed.