UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Russell and AtLee
Argued at Fredericksburg, Virginia

NORTHAMPTON COUNTY AND
 VIRGINIA ASSOCIATION OF
 COUNTIES GROUP SELF-INSURANCE

                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 0542-15-4                        JUDGE RICHARD Y. ATLEE, JR.
                                                    OCTOBER 20, 2015
MARK SOMERS

               FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

               J. David Griffin (Winchester Law Group, P.C., on briefs), for
               appellant.

               Michael A. Kernbach (Law Office of Michael A. Kernbach, P.C.,
               on brief), for appellee.


        Northampton County and the Virginia Association of Counties Group Self-Insurance

(collectively, "employer") appeal a decision of the Virginia Workers' Compensation

Commission ("the commission") in favor of Mark Somers ("claimant").  For ease of discussion,

we condense employer's five assignments of error into three:  (1) claimant's second claim for

temporary total disability ("TTD") was barred by the statute of limitations, (2) the commission

erred by not adopting and enforcing discovery rules, and (3) claimant's second claim for TTD

was not supported by sufficient evidence.[1]  Because we agree that the statute of limitations

barred claimant's second claim, we reverse in part and affirm in part.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Employer's final assignment of error specifically alleges:  "The Commission erred in
ruling that the claimant has sustained his burden of proof that entitles him to a lost time award."
The breadth of this assignment makes it unclear, because claimant ultimately claimed multiple
periods of lost time:  TTD from March 8, 2012 to July 29, 2012; temporary partial disabililty

I. BACKGROUND

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. "On appeal, this Court views the evidence in the light most favorable to the prevailing party below." Town & Country Hosp., LP v. Davis, 64 Va. App. 658, 660, 770 S.E.2d 790, 791 (2015). In this case, claimant prevailed below. "'Factual findings by the commission that are supported by credible evidence are conclusive and binding upon this Court on appeal.'" Nurses 4 You, Inc. v. Ferris, 49 Va. App. 332, 339, 641 S.E.2d 129, 132 (2007) (quoting Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993)).

So viewed, the facts are as follows. Claimant was a Northampton County Sheriff's deputy working at the local jail. In 2013, he filed a claim alleging compensable occupational heart disease. Claimant sought medical benefits and TTD from March 8, 2012 (the date of his diagnosis) through July 29, 2012. A hearing on his claim was rescheduled several times, and the parties had discovery disagreements. On March 6, 2014, employer sent a letter to the chief deputy commissioner stating: "After continued study and consultation, the Carrier has agreed to accept the claimant's claim as compensable. A stipulated Order is being prepared and circulated

---

from July 30, 2012 to March 5, 2014; and TTD from March 6, 2014 and continuing. The commission made no award for the period from July 30, 2012 to March 5, 2014, and employer ultimately conceded that claimant was entitled to an award from March 8, 2012 to July 29, 2012. Employer's briefs focus on the final period of TTD, which the commission ultimately awarded from May 8, 2014 and continuing. Therefore, this opinion interprets the above-quoted assignment of error to mean that employer objects to the TTD awarded for the period from May 8, 2014 and continuing.

so that further rescheduling of the matter is not necessary."  Claimant never signed the "stipulated Order" circulated by employer.[2]

On April 8, 2014, claimant requested compensation for the initial period of TTD (from March 8, 2012 to July 29, 2012) as well as, for the first time, temporary partial disability from July 30, 2012 to March 5, 2014, and TTD from March 6, 2014 and continuing.  All matters were set for a hearing on August 14, 2014.

At the hearing on August 14, 2014, employer apparently offered as an exhibit[3] a document entitled "Stipulation" which stated:  "The defendants stipulate that the claimant's July 25, 2013 application is accepted and the claimant is entitled to a medical award for heart disease, and a lost time award for TTD from March 8, 2012-July 29, 2012.  The employer requests a

---

[2] Employer took two separate steps.  First, it wrote the letter quoted above to the chief deputy commissioner, accepting compensability of the claim.  This acceptance of compensability did not include any agreement as to the specific amount or rate of compensation.  Next, employer apparently drafted a "stipulated Order" and sent such draft order to claimant.  (We say "apparently" because the appendix does not include the draft order.)  This draft order apparently did include a proposed agreement as to compensation, and because claimant was uphappy with the terms contained in the draft order, he did not endorse it.  This draft order was a proposed stipulation, rather than a stipulation.  (A stipulation is "'an agreement between counsel respecting business before a court.'"  Lane v. Lane, 32 Va. App. 125, 129, 526 S.E.2d 773, 775 (2000) (quoting Burke v. Gale, 193 Va. 130, 137, 67 S.E.2d 917, 920 (1951))).  In this case, there is no dispute that no agreement was reached, with claimant noting before us "[w]hen the [proposed] stipulation was received by [claimant], it was rejected outright and *there was never any agreement as to the original claim* until the time of the hearing on August 14, 2014 and even then, there was no agreement as to the wage indemnity claim."  (Emphasis added).  As the draft "stipulated Order" was not endorsed by both parties, it bound neither.  However, employer's unilateral written acceptance of compensability of the claim was not contingent upon the occurrence of any other event, and it became binding upon employer at the time the chief deputy commissioner received it.

[3] The record is unclear.  The undated document is included in the appendix and has a handwritten notation at the bottom labeling it "Comm's exhibit."  The transcript from the hearing does not indicate that such exhibit was offered or admitted into evidence.  The chief deputy commissioner acknowledged the substance of the document, however, stating:  "We have stipulations that the claimant has suffered compensable heart disease and the claim is accepted and is entitled to an award of benefits.  An agreement to a period of temporary total disability from March 8th through July 29th 2012."

credit[4] when the time is reinstated." However, employer alleged that the additional claims made by claimant on April 8, 2014 were barred by the two-year statute of limitations, which expired on March 8, 2014. The chief deputy commissioner disagreed, and found claimant's April 8, 2014 claim to be a change in condition application, rather than a new claim.

The chief deputy commissioner awarded claimant "temporary total disability during the period from March 9, 2012 through July 29, 2012, and beginning May 8, 2014 and continuing until conditions justify a modification, suspension or termination thereof."[5] He also awarded claimant medical benefits for occupational heart disease "for as long as necessary pursuant to Va. Code § 65.2-603." The full commission subsequently affirmed the opinion of the chief deputy commissioner. In explaining its determination that the April 8, 2014 claim was a change in condition claim, the commission stated:

> At the hearing, the defendants stipulated the disease was compensable and [claimant] was entitled to temporary total disability benefits from March 9, 2012 through July 29, 2012. These findings could have been made based upon the July 2013 hearing request without defendants' agreement. After his return to work, the partially disabled claimant worked light duty without wage loss until March 6, 2014 when the employer placed him on leave. The claimant's April 8, 2014 claim was timely as a change in condition claim.

This appeal followed.

---

[4] The chief deputy commissioner denied employer's request for a credit, a finding employer did not appeal to the full commission.

[5] No compensation was awarded for the period of July 30, 2012 to March 5, 2014.

II. ANALYSIS

*A. Standard of Review*

This case requires us to review the commission's interpretation of statutes, a question of law we review *de novo*. Ford Motor Co. v. Gordon, 281 Va. 543, 549, 708 S.E.2d 846, 850 (2011).

> Although "the practical construction given to a statute by public officials charged with its enforcement is entitled to great weight by the courts and in doubtful cases will be regarded as decisive," Southern Spring Bed Co. v. State Corp. Comm'n, 205 Va. 272, 275, 136 S.E.2d 900, 902 (1964), "when an issue involves a pure question of statutory interpretation, that issue does not invoke the agency's specialized competence but is a question of law to be decided by the courts." Alliance to Save the Mattaponi v. Commonwealth, 270 Va. 423, 442, 621 S.E.2d 78, 88 (2005).

Commonwealth v. Barker, 275 Va. 529, 536, 659 S.E.2d 502, 505 (2008).

In interpreting the statutes at issue in this case, however, we must be guided by the purpose and principles underlying the Workers' Compensation Act.

> "The purpose of the [Workers' Compensation] Act is to protect employees." Turf Care, Inc. v. Henson, 51 Va. App. 318, 336, 657 S.E.2d 787, 795 (2008) (citing Ellis v. Commonwealth Dep't of Highways, 182 Va. 293, 303, 28 S.E.2d 730, 734 (1944)). "Thus, it is to be 'construed liberally and favorably as to' employees." Id. (quoting Ellis, 182 Va. at 303, 28 S.E.2d at 734); see also Hospice Choice, Inc. v. O'Quin, 42 Va. App. 598, 603, 593 S.E.2d 554, 556 (2004) ("[W]e are guided by the general principle that the Workers' Compensation Act is to be construed liberally in favor of the employee." (citing Creative Dimensions Group v. Hill, 16 Va. App. 439, 442, 430 S.E.2d 718, 720 (1993))); 7-Eleven, Inc. v. Dep't of Envtl. Quality, 42 Va. App. 65, 75, 590 S.E.2d 84, 89 (2003) (en banc) ("'Further, it is a universal rule that statutes . . . which are remedial in nature, are to be construed liberally, so as to suppress the mischief and advance the remedy, as the legislature intended.'" (quoting Bd. of Sup. v. King Land Corp., 238 Va. 97, 103, 380 S.E.2d 895, 897-98 (1989))).

Prince William Cty. Sch. Bd. v. Rahim, 58 Va. App. 493, 501, 711 S.E.2d 241, 245 (2011) (*en banc*) (alterations in original), aff'd, 284 Va. 316, 733 S.E.2d 235 (2012). Notwithstanding the

liberal construction we must give to the Workers' Compensation Act, "we have a duty, whenever possible, to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal. . . . [T]he various parts of the statute shall be harmonized so that, if practicable, each is given a sensible and intelligent effect." Id. at 500, 711 S.E.2d at 245 (quoting Ford Motor Co., 281 Va. at 549-50, 708 S.E.2d at 850).

### B. Statute of Limitations

Employer's statute of limitations argument is dispositive. Code § 65.2-406(A) addresses the relevant limitation period controlling the filing of initial claims for compensation under the Workers' Compensation Act. That Code section states:

> The right to compensation under this chapter shall be forever barred unless a claim is filed with the Commission within one of the following time periods:
>
> \* \* \* \* \* \* \*
>
> 6. For all other[6] occupational diseases, two years after a diagnosis of the disease is first communicated to the employee or within five years from the date of the last injurious exposure in employment, whichever first occurs.

Pursuant to Code § 65.2-400(A), an "occupational disease" is "a disease arising out of and in the course of employment, but not an ordinary disease of life to which the general public is exposed outside of the employment." Code § 65.2-402(B) establishes the presumption present in this case:

> Hypertension or heart disease causing the death of, or any health condition or impairment resulting in total or partial disability of . . . (iv) sheriffs and deputy sheriffs . . . shall be presumed to be occupational diseases, suffered in the line of duty, that are covered

---

[6] The "other" diseases, listed in paragraphs 1 through 5, respectively, of Code § 65.2-406(A), are pneumoconiosis, byssinosis, asbestosis, human immunodeficiency virus, and "diseases directly attributable to the rescue and relief efforts at the Pentagon following the terrorist attack of September 11, 2001."

> by this title unless such presumption is overcome by a
> preponderance of competent evidence to the contrary.

Employer conceded that claimant's July 25, 2013 claim for heart disease was compensable. The claim was governed by the statute of limitations in Code § 65.2-406(A)(6), requiring the filing of a claim within "two years after a diagnosis of the disease is first communicated to the employee." Because the date of communication was March 8, 2012, the statute of limitations for the initial claim expired on March 8, 2014.

Claimant filed a claim on April 8, 2014. The chief deputy commissioner found this to be a change in condition claim, not a new claim. A "change in condition" is a term of art. Code § 65.2-708 governs change in condition claims and states in part:

> A. Upon its own motion or upon the application of any party in
> interest, on the ground of a change in condition, the Commission
> may review any award of compensation and on such review may
> make an award ending, diminishing or increasing the
> compensation previously awarded . . . . No such review shall be
> made after 24 months from the last day for which compensation
> was paid, pursuant to an award under this title, except [in certain
> situations not present here].

The commission erroneously found claimant's April 8, 2014 claim to be a change in condition claim, a finding that had the practical effect of extending the statute of limitations significantly. By the terms of Code § 65.2-708(A), there must be some previous award to modify in order for the commission to address a claim as a change in condition.

### 1. Subsection C of Code § 65.2-708

In his brief and again at oral argument, claimant asserts that subsection C of Code § 65.2-708 transmutes his April 8, 2014 claim from a new claim into a change in condition claim. Code § 65.2-708(C) states:

> All wages paid, for a period not exceeding 24 consecutive months,
> to an employee (i) who is physically unable to return to his
> pre-injury work due to a compensable injury and (ii) who is
> provided work within his capacity at a wage equal to or greater

- 7 -

> than his pre-injury wage shall be considered compensation paid
> pursuant to an award for compensation . . . .

From July 30, 2012 until March 5, 2014, employer accommodated claimant and allowed him to work in a light-duty position. No award was in place at the time of the accommodation. Claimant argues that Code § 65.2-708(C) means that all of the wages paid by employer to claimant during this period must be "treated as 'compensation.'" Viewing subsection C in this manner would mean that any subsequent claim would be treated as a change in condition under subsection A of Code § 65.2-708. More significantly for claimant, viewing subsection C this way would mean that the statute of limitations would not begin running until March 6, 2014, and would not end until March 6, 2016, thus preserving all of the claims made by claimant on April 8, 2014. Claimant's analysis is faulty, however, and it misinterprets the relationship between subsections A and C of Code § 65.2-708.

This Court explained the interplay between those two subsections in <u>Rahim</u>. In explaining the purpose of subsection C, this Court observed: "'Code § 65.2-708(C) operates as a tolling provision that extends subsection A's limitation by expanding the definition of "compensation" under subsection A to include wages which meet certain conditions.'" <u>Rahim</u>, 58 Va. App. at 502, 711 S.E.2d at 246 (quoting <u>Ford Motor Co.</u>, 281 Va. at 550, 708 S.E.2d at 850). Furthermore, "the two subsections 'operat[e] in conjunction with each other. Subsection C is not a stand-alone provision — it instead provides a definition for the tolling mechanism applied to subsection A, where a claimant has received wages (rather than compensation) as provided in subsection C.'" <u>Id.</u> at 503, 711 S.E.2d at 246 (alteration in original) (quoting <u>Ford Motor Co.</u>, 281 Va. at 551, 708 S.E.2d at 851 (quoting <u>Gordon v. Ford Motor Co.</u>, 55 Va. App. 363, 373, 685 S.E.2d 880, 885 (2009))). Finally, this Court held: "Therefore, *once an award is entered*, the statute of limitations provided in Code § 65.2-708(A) then begins to run after the

date of the entry of the award from either the date compensation was last paid pursuant to the award or pursuant to subsection C." Id. at 506, 711 S.E.2d at 247-48 (emphasis added).[7]

A claimant cannot invoke subsection C of Code § 65.2-708 unless there has been a previous award of compensation. We are left to determine if an award of compensation was paid during this two-year period.

## 2. *De Facto* Awards

There are two types of compensation award: *de jure* and *de facto*. A *de jure* award of compensation is an actual award by the commission. Neither party asserts that the commission made a *de jure* award between March 8, 2012 and March 8, 2014. That leaves open the question of whether there was a *de facto* award in place during that time.

"A *de facto* award is a legal fiction crafted by the courts, 'a creature of case law not statutory law.'" Lysable Transp., Inc. v. Patton, 57 Va. App. 408, 414, 702 S.E.2d 596, 598 (2010) (quoting Ryan's Family Steak Houses v. Gowan, 32 Va. App. 459, 465, 529 S.E.2d 720, 723 (2000) (Bumgardner, J., concurring)). "The *de facto* award doctrine permits the commission to impute an award based on an actual agreement or stipulation. . . . [A]n actual agreement or

---

[7] The primary issue in Rahim was the meaning of the portion of Code § 65.2-708(A) stating that "the Commission may review any award . . . ." Specifically, the question was whether the phrase "any award" meant only an award of compensation, or whether the term also encompassed a medical-only award. This Court found that the phrase "any award" encompassed both an award of compensation and a medical-only award and that a medical-only award within the twenty-four-month period, even in the absence of any award of compensation, was sufficient to toll the statute of limitations and to permit a claimant to invoke subsection C. In 2013, the year after the Supreme Court's affirmance of this Court's *en banc* decision in Rahim, the General Assembly amended Code § 65.2-708(A), changing the relevant phrase to read that "the Commission may review any award *of compensation* . . . ." (Emphasis added). 2013 Va. Acts ch. 445. The General Assembly also amended subsection C of Code § 65.2-708. Id. Although these amendments affect Rahim's holding as to whether a medical-only award, without more, can extend the statute of limitations and thus permit a change in condition claim, the amendments do not affect the validity of Rahim's discussion of the relationship between subsections A and C of Code § 65.2-708, for which we cite the case.

stipulation has been an essential element in every case in which we have applied the doctrine."
Id. at 416, 702 S.E.2d at 599.

Patton listed the factors that must be present to establish a *de facto* award, recognizing the need to be "careful not to extend the judge-made concept beyond its original parameters." Id. at 415, 702 S.E.2d at 599.

> The *de facto* award doctrine applies only when "the employer has stipulated to the compensability of the claim, has made payments to the employee for some significant period of time without filing a memorandum of agreement, and fails to contest the compensability of the injury . . . ."

Id. (emphasis omitted) (quoting Gowan, 32 Va. App. at 463, 528 S.E.2d at 722). Once these conditions are present, it is "'reasonable to infer that the parties have reached an agreement,' . . . regarding compensability of the claim." Id. (quoting Gowan, 32 Va. App. at 463, 528 S.E.2d at 722). In the case at bar, employer conceded the compensability of the medical claim and the initial TTD claim. From July 30, 2012 to March 5, 2014, employer accommodated claimant and allowed him to work in a light-duty position. Although employer did pay claimant during the time claimant worked in this light-duty position, these were not payments pursuant to an agreement on claimant's claim for TTD benefits.

In 2003, this Court decided two cases factually similar to claimant's case, in both instances finding that no *de facto* award had been established. In White v. Redman Corp., 41 Va. App. 287, 584 S.E.2d 462 (2003), the employer did not contest compensability of the claim, and made voluntary payments to the claimant. The claimant and the employer, however, never arrived at a specific agreement because the "[c]laimant elected not to sign the agreement form because he did not agree with the average weekly wage calculation." Id. at 291, 584 S.E.2d at 464. In Watts v. P & J Hauling, 41 Va. App. 278, 584 S.E.2d 457 (2003), as in White, the claimant urged this Court to find that there had been a *de facto* award, since "the parties

- 10 -

stipulated that there was a compensable injury by accident and that employer made voluntary payments to claimant for a substantial period of time . . . ." Id. at 285, 584 S.E.2d at 461. Although the employer in Watts conceded the compensability, and even made payments, "the amount of compensation clearly remained in dispute." Id. at 286, 584 S.E.2d at 461. In both White and Watts, the lack of agreement between the claimant and the employer as to the amount of compensation to be paid was fatal to the claimant's attempt to establish a *de facto* award of compensation. So too, any implied finding[8] of a *de facto* award fails here for the same deficiency.

"[T]he concept of a *de facto* award is grounded in the well-established principle of estoppel . . . . [I]n order for there to be any estoppel there must be detrimental reliance by the party claiming estoppel." Roske v. Culbertson Co., 62 Va. App. 512, 521-22, 749 S.E.2d 550, 555 (2013). Claimant, at the time the statute of limitations expired, could not have relied upon the existence of a *de facto* award, because the parties had not agreed upon all relevant terms. Claimant conceded this lack of agreement in his position statement to the commission: "The stipulation prepared by the employer was outright rejected by counsel for the claimant. The employer refused to reinstate workers' compensation benefits as of the date of the stipulation . . . ." The most the employer did was agree that the injury was compensable. In order to preserve a new claim, it was incumbent upon claimant to file such claim within two years of the date of diagnosis. At the hearing, the chief deputy commissioner acknowledged the lack of specific agreement between the parties when he stated: "There is no stipulation for

---

[8] The commission did not discuss *de facto* awards at length, nor did it find explicitly that a *de facto* award had been established. However, given the lack of any *de jure* award, and claimant's filing of a claim more than two years after the date of diagnosis, only the existence of a *de facto* award could justify the commission's finding that "[t]he claimant's April 8, 2014 claim was timely as a change in condition."

pre-injury average weekly wage." In light of this lack of a specific agreement, there was no *de facto* award, and thus no resulting extension of the statute of limitations.

### *C. Other Assignments of Error*

Because we agree that the statute of limitations barred claimant's filings on April 8, 2014 (to the extent they differed from his 2013 claim), we do not reach employer's assignments of error alleging the commission failed to adopt and apply rules of discovery. It is likewise unnecessary to address employer's assignment of error alleging that the evidence was insufficient to support claimant's second lost time claim, as we find such claim barred by the statute of limitations.

### III. CONCLUSION

The new claims contained in claimant's April 8, 2014 filing were barred by the statute of limitations, as the filing was not a change in condition application. Accordingly, the commission's decision affirming the chief deputy commissioner's award to claimant of TTD "beginning May 8, 2014 and continuing until conditions justify a modification, suspension or termination thereof" is reversed and is remanded to the commission for further proceedings consistent with this opinion. The remaining awards made by the chief deputy commissioner, and affirmed by the commission, are affirmed.

Affirmed in part and<br>reversed in part.