COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Humphreys and O'Brien
Argued at Fredericksburg, Virginia

PUBLISHED

DEBRA LEVY

v.        Record No. 1634-17-4

WEGMANS FOOD MARKETS, INC.

OPINION BY
JUDGE ROBERT J. HUMPHREYS
APRIL 3, 2018

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

M. Thomas McWeeny (Koonz, McKenney, Johnson, DePaolis &
Lightfoot, L.L.P., on briefs), for appellant.

Alex M. Mayfield (Franklin & Prokopik, P.C., on brief), for appellee.


On September 7, 2017, the Virginia Workers' Compensation Commission ("the

Commission") denied Debra Levy's ("Levy") compensation claim.  On appeal, four of Levy's

five assignments of error essentially restate her basic argument that the Commission erred in

applying both the claim and issue preclusion aspects of the doctrine of res judicata[1] to her

compensation claim.  Levy's fifth assignment of error asserts that the Commission's erroneous

understanding of res judicata deprived her of her due process rights under the Fourteenth

Amendment to the United States Constitution.

I.  BACKGROUND

Levy, an employee of Wegmans Food Markets, Inc. ("Wegmans") damaged her right

knee, which had pre-existing arthritis, in a June 26, 2011 incident where she slipped and fell in

---

[1] Res judicata, "a thing adjudicated," is a doctrine which prevents rehearing of a matter
by the courts following a final judgment, it is further discussed below.

the back of Wegmans's walk-in freezer. This injury required surgery, a partial medial meniscectomy. Levy filed a number of claims related to this injury over a protracted period.

The claim at issue was filed on April 29, 2015, seeking approval of arthroscopic knee surgery, proposed by Levy's doctor, Dr. John Stanton ("Dr. Stanton"), and protective disability claims continuing from January 29, 2015. In a September 21, 2015 review opinion the full Commission found

> no indication in Dr. Stanton's records that the claimant's compensable injury is playing a role in any disability which [Levy] may have . . . . The surgery he is contemplating clearly appears to be related solely to the claimant's arthritis, which was at an advanced stage even before the compensable accident.

The day following the decision of the Commission, Levy requested an evidentiary hearing for the surgery and related disability. On December 30, 2015, Levy filed "new" claims for a 27% permanent partial disability to the right leg, and added "aggravation/acceleration of [her] right knee arthritis as a compensable consequence of the June 26, 2011 injury." Levy deposed Dr. Stanton on January 7, 2016. In this deposition Dr. Stanton stated that the partial meniscectomy following the 2011 incident had accelerated the degenerative condition of her knee and that his proposed surgery was necessary and causally related to her 2011 injury.

This evidence for the surgery and the "new" claims was heard before a deputy commissioner on May 19, 2016. The deputy commissioner requested that the parties brief why the claims were not barred by the doctrine of res judicata based on the September 21, 2015 review opinion. This request caused Levy to withdraw the total disability claims and proceed only on the partial disability and surgery claims. The requested briefs were provided, and the deputy commissioner found that the partial disability and surgery-related claims were barred by the doctrine of res judicata. The deputy commissioner also found the aggravation/acceleration claim barred by res judicata.

- 2 -

Levy sought review of this decision by the full Commission. Oral argument before the Commission occurred on August 16, 2017, where Levy argued that the claim was a new compensable consequence claim which had not been litigated. The full Commission affirmed the deputy commissioner's opinion on September 7, 2017, leading Levy to seek reconsideration, which was denied. Levy subsequently appealed the Commission's decision to this Court on October 5, 2017.

## II. ANALYSIS

### A. Standard of Review

Whether a claim or issue is precluded by res judicata principles is a question of law which we review *de novo*. See Rhoten v. Commonwealth, 286 Va. 262, 267, 750 S.E.2d 110, 112 (2013). "'The doctrine of *res judicata* is applicable to decisions of deputy commissioners and the full commission. . . . [and] "precludes the re-litigation of a claim or issue once a final determination on the merits has been reached."'" Pruden v. Plasser Am. Corp., 45 Va. App. 566, 573, 612 S.E.2d 738, 742 (2005) (quoting Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 128, 510 S.E.2d 255, 259 (1999) (*en banc*)).

### B. Res Judicata in General

The doctrine of res judicata is based upon the practical necessity for court judgments resolving legal disputes to be final so that the parties may rely upon them going forward and refers to the preclusive effect on future litigation of a final judgment already rendered, this effect is bifurcated into claim preclusion and issue preclusion categories. See Taylor v. Sturgell, 553 U.S. 880, 892 (2008). Claim preclusion "bars 'successive litigation [between the same parties] of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" Brock v. Voith Siemens Hydro Power Generation, 59 Va. App. 39, 45, 716 S.E.2d 485, 488 (2011) (quoting Taylor, 553 U.S. at 892). Claim preclusion extends beyond the

presented claim itself to include "those [claims] 'incident to or essentially connected with the subject matter of the litigation, whether the same, as a matter of fact, were or were not considered.'" Id. at 46, 716 S.E.2d at 488 (quoting Lofton Ridge, LLC v. Norfolk S. Ry., 268 Va. 377, 381, 601 S.E.2d 648, 650 (2004)). Claim preclusion is governed by Rule 1:6 of the Rules of the Supreme Court of Virginia:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, *whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought.*

(Emphasis added).

The issue preclusion component of the doctrine of res judicata bars re-litigation between the same parties of "any issue of fact actually litigated and essential to a valid and final personal judgment in the first action." Brock, 59 Va. App. at 45, 716 S.E.2d at 488 (quoting Rawlings v. Lopez, 267 Va. 4, 4-5, 591 S.E.2d 691, 692 (2004)).

Levy's assignments of error address both res judicata as a whole and claim preclusion specifically. She argues that the Commission erroneously considered issue preclusion in what was a claim preclusion analysis. However, the Commission's September 7, 2017 opinion addressed her successive surgery claims using both an issue preclusion and claim preclusion analysis. The Commission found that, while the surgery had not been a claim considered by the Commission at the previous hearing, the "medical evidence supporting the need for that surgery was fully considered" and as a result "the concept of issue preclusion bars reconsideration of whether the need for surgery is causally related." Further, the Commission agreed with Levy that whether her "pre-existing arthritis was aggravated as a compensable consequence of her

- 4 -

June 26, 2011 injury" was "a new issue not previously litigated" but that this claim was still barred by claim preclusion because no evidence was presented which could not have been presented at the previous hearing.

Levy argues that the Commission's claim preclusion analysis is in error because had she attempted an aggravation/acceleration claim prior to this deposition, it would have lacked sufficient evidence, Dr. Stanton's deposition, to succeed. The situation is analogous to Brock where the claimant failed to present sufficient evidence to fully support his claims.

In Brock, the claimant sought "benefits for injuries to his shoulder, back, and hips," which was later amended to include additional injuries to his head and leg. Id. at 42, 716 S.E.2d at 486. The claimant was notified by the Commission that a hearing would be held to address "all issues." Id. At this hearing, the claimant produced no evidence of injuries to any body part but his left shoulder. The claimant later attempted to bring "new" claims for injuries to his back, hip, and legs from the same accident. Id. at 43, 716 S.E.2d at 486. We reiterated Virginia's "could-have-litigated-should-have-litigated principle" as applied to compensation claims, which holds that claim preclusion bars not only the claims made in the pleadings but any claim which "'incident to or essentially connected with the subject matter of the litigation, whether the same, as a matter of fact, were or were not considered.'" Id. at 46, 716 S.E.2d at 488 (quoting Lofton Ridge, LLC, 268 Va. at 381, 601 S.E.2d at 650).

Levy attempts to distinguish Brock on the basis that the claimant in Brock failed to reserve the issues before the Commission. Levy did not reserve the causation issue either, but claims that she did not have to because it was "new" and therefore not before the Commission at the time. Levy describes the issue as new because she did not have the evidence to support it until she deposed Dr. Stanton. Levy also argues that her arthritis is a "new" issue because it was introduced as a defense by Wegmans.

- 5 -

Regardless of who raised the issue, the Commission addressed causation. Levy cites no case law or other authority which considers the party raising an issue as a component of a res judicata analysis. The Commission noted in its September 21, 2015 opinion that Levy's "pre-existing arthritic condition could have been aggravated by the compensable injury and subsequent surgery, but that there was no medical opinion before it to support such a finding." Therefore, neither the issue of causation nor the evidence relayed in Dr. Stanton's deposition, concerning a condition which predated the initial 2011 injury, may be fairly categorized as "new."

Levy states that she did not depose Dr. Stanton at an earlier date because it is an expensive process. If the claimant chooses not to gather as much medical information as is necessary for the Commission to make a determination, they are gambling with their chances of success; an unwise decision, and a decision in which the courts will not act as underwriters. "Where an application for a change in condition is filed for the sole purpose of presenting additional evidence in support of a claim that has previously been denied, *res judicata* will bar reconsideration of the claim." Fodi's v. Rutherford, 26 Va. App. 446, 448, 495 S.E.2d 503, 504 (1998).

Levy's case is likewise similar to AMP, Inc. v. Ruebush, 10 Va. App. 270, 391 S.E.2d 879 (1990), where the claimant filed a change in condition claim which was denied for failing to establish a definite causal connection. When this claim was denied, the claimant gathered more medical evidence from her physician and filed a second claim, which the Commission granted. This Court reversed, finding "that it was error for the deputy commissioner and the full commission to rehear the same claim on the issue of causation after final judgment had been entered denying Ruebush's application for reinstatement of benefits." Id. at 275, 391 S.E.2d at 882.

Levy argues that the claimant in Ruebush was estopped from using the medical evidence to prove causation because the Commission denied her motion to keep the record open for gathering additional medical evidence on the first change in condition claim, while Levy made no such motion and sought no such evidence. In other words, Levy essentially argues because she did not attempt to gather the evidence, the Commission did not rule on her ability to do so, and she therefore should have a second chance at proving causation. This "better to beg forgiveness than ask permission" theory of procedure would incentivize gamesmanship. Were this approach authorized it would quickly lead to claimants seeking only piecemeal evidence supporting a select and narrow theory of causation, in the full knowledge that should this theory fail, they will have other opportunities so long as the Commission or court is unaware they have alternative theories. Such a carefully cultivated willful ignorance with a goal of guaranteeing additional attempts to prove a claim is antithetical to the purpose of res judicata, which "protects not only parties from having to try the same case twice but also society from having to pay the institutional cost of adjudicating needlessly fragmented litigation." Funny Guy, LLC v. Lecego, LLC, 293 Va. 135, 142, 795 S.E.2d 887, 890 (2017).

## C. Due Process

Finally, Levy argues that her due process rights were violated by the Commission's confusion of claim preclusion and issue preclusion. Levy argues this confusion prevented her from filing compensable consequence claims related to her pre-existing arthritis. Any confusion here is attributable to Levy, not the Commission. We reiterate that the Commission properly addressed both claim and issue preclusion and that an application of res judicata does not violate due process as that has already been provided by the prior litigation opportunity but, rather, "is a fundamental concept in the organization of every jural society." Funny Guy, LLC, 293 Va. at 142, 795 S.E.2d at 890.

### III. CONCLUSION

The Commission's September 21, 2015 determination that there was no medical evidence causally linking Levy's workplace injury to her arthritis was not an invitation for Levy to create this evidence and "take another swing," but rather a plain statement that no such evidence had been presented at the hearing. At that hearing, Levy had the opportunity to offer evidence of causation for the contemplated surgery, she chose not to, and to reward her with another opportunity to do so would incentivize piecemeal litigation, undermine the finality of judgments, and multiply the number of proceedings - the very evils the doctrine of res judicata was developed to address. Consequently, the Commission's judgment is affirmed.

<u>Affirmed.</u>