COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Lorish and Callins
Argued at Richmond, Virginia

**PUBLISHED**

COUNTY OF HENRICO AND
  PMA MANAGEMENT CORPORATION, TPA

v.      Record No. 0932-21-2

CASIE O'NEIL

OPINION BY
JUDGE DOMINIQUE A. CALLINS
AUGUST 2, 2022

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Brian J. McNamara (Scott C. Ford; Ford Richardson, P.C., on
> brief), for appellants.
>
> Casie O'Neil, *pro se*.

The County of Henrico and PMA Management Corporation, TPA (referred to

collectively as "Henrico County") appeal a decision of the Virginia Workers' Compensation

Commission ("the Commission") awarding Casie O'Neil benefits for injuries from an accident

arising out of and in the course of her work.  On appeal, Henrico County argues that the

Commission erred by concluding that O'Neil's claim for benefits was not barred by res judicata.

Henrico County also contends that the Commission erred by refusing to permit the County to

participate in oral argument in an unrelated case and that the Commission erred by finding that

O'Neil's injuries were causally related to her workplace accident.  For the following reasons, we

affirm the Commission's decision.

BACKGROUND

I. Medical History

On March 24, 2017, O'Neil, a sheriff's deputy, attended a sheriff's training exercise.

During the training, a lieutenant punched her near the throat, causing pain in her collarbone,

neck, head, left arm, and ear. Immediately following the punch, O'Neil felt pain on her left side, she could not hear anything, and her jaw hurt. Her supervisors instructed her to go back to her workplace to fill out an incident report. She experienced more pain while driving, so she pulled over and her supervisor drove her to the emergency room where she was treated by C. Bruce Spiller, a nurse practitioner.

After the first visit, NP Spiller's physician's forms from March 24 to March 28 indicated that she had "left clavicle contusion/pain" and restricted O'Neil to "light duty" status. The forms also stated that O'Neil should not lift anything over five pounds and that she should avoid using her left arm. NP Spiller referred O'Neil to an orthopedic specialist, Dr. Stephen Reese, who, on March 30, 2017, diagnosed her with a brachial plexus injury and sternoclavicular joint strain. Dr. Reese's notes recounted the training incident under the heading "onset."

Next, upon Dr. Reese's recommendation, O'Neil visited Anne Stuart, a physical therapist. Ms. Stuart's notes indicated that O'Neil suffered a brachial plexus and sternoclavicular injury after a hit to her throat and, in the same paragraph, stated, "CC limited movement left arm. Waking up due to left arm pain. Tingling intermittent to index finger." On April 11, 2017, O'Neil again visited Dr. Reese, who diagnosed her with a brachial plexus injury and radicular pain of her left upper extremity.

Then, around April 20, 2017, O'Neil's doctors performed an MRI exam, which indicated "multilevel degenerative disc disease in the spine" and led Dr. Reese to also diagnose O'Neil with "strain of muscle / fascia and tendon at neck level / subsequent encounter." Again, Dr. Reese referred to the training incident under the heading "onset." He also referred her to a pain specialist, who narrated the training incident under the heading "problem story" and who believed she "suffer[s] from a brachial plexopathy."

Around May 31, 2017, O'Neil underwent electrodiagnostic studies, which indicated a normal nerve exam. In the notes under "diagnosis," the attending physician noted "pain in left arm" and "hypoesthesia [numbness] of skin." The physician also noted that O'Neil's pain was associated with a workplace injury from March 24, 2017. Around July 10, 2017, Dr. Reese approved O'Neil to return to full-duty work.

On October 31, 2017, O'Neil visited Dr. Anthony Julius, a neurologist. He diagnosed her with a brachial plexus injury, reactive cervical lymphadenopathy, neuropathic pain, and otalgia of the left ear. Like the other doctors, Dr. Julius noted in the report that O'Neil's pain began with the training incident. He also wrote, "I believe her pain is most consistent with an injury of the brachial plexus with neuralgia." He then referred her to an ear, nose, and throat specialist (ENT).

On November 15, 2017, O'Neil visited Dr. Wayne T. Shaia, an ENT, who noted the training incident and diagnosed her with "vertigo of central origin," tinnitus, unilateral sensorineural hearing loss in her left ear, and left ear otalgia. On November 28, 2017, O'Neil returned to Dr. Shaia, who diagnosed her with "labyrinthine dysfunction" and "otalgia" in her left ear. She also underwent videonystagmography testing, which showed an abnormality in her left ear.

## II. Procedural History

On April 20, 2017, O'Neil filed a "Claim for Benefits" with the Workers' Compensation Commission, claiming injuries to her neck, collarbone, and upper left extremity. After her filing, the parties entered into a voluntary award agreement that provided temporary total disability due to "sternoclavicular joint strain." The Commission approved the agreement on June 20, 2017. An evidentiary hearing was never scheduled.

Beginning in February 2018, O'Neil filed three more claims requesting compensation for injuries related to the same incident. The first two claims were withdrawn without prejudice; the third claim is at issue here. This claim sought compensation for injuries sustained to her brachial plexus, neck, collarbone, left upper extremity, left ear, and mouth as part of the original March 24, 2017 accident and compensation for a brain injury as a compensable consequence of the accident. A deputy commissioner held an evidentiary hearing on April 9, 2019, where O'Neil withdrew her claim for the brain injury. On October 21, 2019, the deputy commissioner entered an opinion denying O'Neil's claims based on res judicata. The same day, O'Neil filed a request for review with the Commission.

On March 6, 2020, the Commission reversed the deputy commissioner's opinion and found that res judicata did not apply to O'Neil's claims. The case was remanded to the deputy commissioner, who denied the claim because O'Neil failed to prove that any injuries to her brachial plexus, neck, collarbone, left arm, left ear, or mouth were directly related to the incident or a compensable consequence of that incident. On August 5, 2020, the full Commission partially reversed the deputy commissioner, finding that O'Neil sufficiently proved compensable injuries to her brachial plexus, neck, collarbone, and left arm, but affirming that she did not prove compensable injury to her left ear or mouth. This appeal timely followed.

ANALYSIS

On appeal, Henrico County contends that the Commission erred in hearing and deciding O'Neil's claims for benefits. The County argues that O'Neil's claims for benefits for injuries to her brachial plexus, neck, collarbone, and left arm are barred by the res judicata doctrine of claim preclusion. Henrico County also argues that it was denied the opportunity for oral argument in a different case the Commission determined to hear before rendering a decision in this case. It

- 4 -

argues that O'Neil failed to prove the causal connection between the injuries to her brachial plexus, neck, collarbone, and left upper extremities and her workplace accident.

### I. Res judicata does not apply to bar to O'Neil's claims.

#### A. Res Judicata as Applied in Workers' Compensation Cases Generally

We first address Henrico County's contention that the principles of res judicata bar O'Neil's claims for benefits for all injuries except those specifically resolved by the voluntary award agreement. The application of res judicata is a question of law we review de novo. *Advance Auto & Indem. Ins. Co. v. Craft*, 63 Va. App. 502, 514 (2014).

"[R]es judicata is a judicially created doctrine resting upon public policy considerations which favor certainty in the establishment of legal relations, demand an end to litigation, and seek to prevent harassment of parties." *Id.* at 514-15 (quoting *K & L Trucking Co. v. Thurber*, 1 Va. App. 213, 219 (1985)). "[T]he doctrine is firmly established in our jurisprudence and should be maintained where applicable." *Thurber*, 1 Va. App. at 219. It includes "[t]wo distinct concepts—issue preclusion and claim preclusion." *Brock v. Voith Siemens Hydro Power Generation*, 59 Va. App. 39, 45 (2011). Issue preclusion, also referred to as "collateral estoppel," precludes the same parties from re-litigating "any issue of fact actually litigated and essential to a valid and final personal judgment in the first action." *Id.* (quoting *Rawlings v. Lopez*, 267 Va. 4, 4-5 (2004)). In contrast, claim preclusion precludes a party from continuing to litigate claims stemming from the same cause of action against the same party. *See Bates v. Devers*, 214 Va. 667, 670-71 (1974). Claim preclusion, also referred to as "merger" or "bar," "treats unasserted claims as being subsumed into the disposition of related, previously adjudicated, claims arising out of the same cause of action." *Brock*, 59 Va. App. at 45.[1] "Claims

---

[1] Rule 1:6 codified the common law doctrine of res judicata. Where we have previously balanced res judicata against competing policy considerations, those limits to res judicata apply

precluded by res judicata include those 'made or tendered by the pleadings,' as well as those 'incident to or essentially connected with the subject matter of the litigation.'" *Id*. at 46 (quoting *Lofton Ridge*, *LLC v. Norfolk S. Ry.*, 268 Va. 377, 381 (2004)).

We have held that the principles of res judicata apply to workers' compensation cases. *See Rusty's Welding Serv., Inc. v. Gibson*, 29 Va. App. 119, 128 (1999) (en banc); *Craft*, 63 Va. App. at 515. Yet we have also recognized that when res judicata conflicts with other public policy considerations, we must balance application of the doctrine against those other considerations. *See Bates*, 214 Va. at 670 n.2 ("We recognize[] that in an appropriate case, res judicata, a doctrine based on public policy, may give way when in irreconcilable conflict with other, more important public policies."). The Workers' Compensation Act was enacted for humanitarian purposes and is therefore liberally construed. *Fauver v. Bell*, 192 Va. 518, 522 (1951). The Act represents a compromise, where employers surrender certain defenses and employees may recover less than was available at common law. *Id.* As our Supreme Court noted, "[a]n essential element of this compromise is the employer's obligation to pay for compensable injuries at a rate contemplated by the Act." *John Driggs Co., Inc. v. Somers*, 228 Va. 729, 735 (1985). When claimants come before the Commission, they are injured and either unable to work or unable to work at full capacity. This reality limits a claimant's bargaining power. *See Craft*, 63 Va. App. at 518-19. An injured claimant is more likely to need immediate compensation and, absent protective public policy measures, may "be forced by their circumstances to agree to [immediate] awards that only provide compensation for some of their work-related injuries." *Id.* Thus, we have determined that "[t]he principles of res judicata should not be applied in a way that facilitates such inequitable results." *Id*. at 519.

---

to Rule 1:6. *See Funny Guy, LLC v. Lecego*, *LLC*, 293 Va. 135, 150 n.15 ("All of the ordinary caveats to res judicata apply to Rule 1:6's transactional approach to merger and bar.").

We recognize that a "[w]orkers' compensation case, of course, cannot always be concluded in a single evidentiary hearing," and have therefore affirmed the Commission's "tailored . . . application of res judicata to take into account allegations of injury that, while pled in the initial claim may nonetheless not be ripe for final adjudication." *Brock*, 59 Va. App. at 49.[2] Recognizing the need to balance finality in litigation against the established public policy considerations that undergird the purpose of the Workers' Compensation Act, this Court has limited the application of res judicata as a bar to claimant's relief to two scenarios: 1) in a final judgment after a party has pursued and submitted a claim at an evidentiary hearing or 2) when a claim is considered waived or abandoned. *Craft*, 63 Va. App. at 517.[3]

"A final judgment based on a determination by the [C]omission . . . conclusively resolves the claim as to that particular injury," so that "nothing more is necessary to settle the rights of the parties or the extent of those rights." *AMP, Inc. v. Ruebush*, 10 Va. App. 270, 274 (1990) (citing *Thurber*, 1 Va. App. at 219); *Gibson*, 29 Va. App. at 128 (quoting 8B Michie's Jurisprudence, *Former Adjudication or Res Judicata* § 13 (1994)) (holding that the Commission did not err in determining that a deputy commissioner's order stating, "claim denied . . . at this time" was not a final determination on the merits).

Even when not fully litigated on the merits, a claim for benefits may be barred by res judicata when it is considered abandoned or waived. Whether a claimant has abandoned or

---

[2] We have recognized that among the "protective measures" available to avoid finally deciding matters "unripe for adjudication" include the Commission's authority to defer premature issues and to permit claimants to voluntarily withdraw claims before a matter has closed and been submitted for decision. *See Brock*, 59 Va. App. at 49 (citing *Brown v. United Airlines, Inc.*, 34 Va. App. 273 (2001); *Jenkins v. Webb*, 47 Va. App. 404, 407 (2006)). We note that here, O'Neil seized on at least one of these protective measures. We are not inclined to apply res judicata principles to penalize her for the same.

[3] To the extent that *Craft* and *Shy v. Starbucks Coffee Co.*, 61 Va. App. 229 (2012), conflict, we find *Craft* more persuasive given the facts in this case, and consequently, *Craft* controls here.

waived her injury claim is rarely a matter of explicit statement but may be construed from a party's conduct.

A claimant abandons her claim when the claim proceeds to an evidentiary hearing and the claimant fails to present evidence for all the injuries asserted in her claim for benefits. *Brock*, 59 Va. App. at 49 (applying res judicata to bar claims brought in a second hearing after the claimant was warned that "[a]*ll issues* will be considered," at his first evidentiary hearing). Similarly, a claimant may abandon her claims when she represents to the Commission that an award agreement encompasses all her injury claims. *See Tuck v. Goodyear Tire & Rubber Co.*, 47 Va. App. 276, 284 (2008) (holding that the Commission did not err in finding no proof of "mutual mistake" where the claimant represented to the Commission that "all issues were resolved" by the award agreement).

Waiver, in comparison, "is an intentional relinquishment of a known right." *Orthopaedic & Spine Ctr. v. Muller Martini Mfg. Corp.*, 61 Va. App. 482, 492 (2013). It is characterized by "voluntary action or inaction with intent to surrender a right *in esse* with knowledge of the facts and circumstances which gave birth to the right. . . . In waiver, both knowledge of the facts basic to the exercise of the right and the intent to relinquish that right are essential elements. . . ." *Roske v. Culbertson Co. & Va. Sur. Co., Inc.*, 62 Va. App. 512, 518 (2013) (quoting *Employers Com. Union Ins. Co. v. Great Am. Ins. Co.*, 214 Va. 410, 412-13 (1973)). Without "clear, precise and unequivocal evidence" of intent to surrender a known right, we have not interpreted a party's conduct, such as signing a memorandum of agreement, as waiving a right not explicitly contained within the agreement. *Id*. at 520 (quoting *Utica Mut. v. Nat'l Indem.*, 210 Va. 769, 733 (1970)). Our holding in *Craft* is exemplary of this notion.

In *Craft*, the claimant entered into a voluntary award agreement with the employer and then, approximately twenty-two months later, filed a claim for benefits with the Commission

seeking an award for additional, separate injuries stemming from the same accident. 63

Va. App. at 512-13. The full Commission upheld the subsequent award, holding that because the

claimant had not filed a claim when the award order was entered, the claimant had not waived

her rights to the additional injury claims not covered by the award agreement, and the doctrine of

res judicata did not apply. *Id*. at 513. The employer then appealed to this Court.

In affirming the Commission's holding, we found the procedural posture of the case

significant and distinguished it from our prior precedent. We reasoned that "[the claimant] had

not yet put all of her injuries at issue before the [C]ommission or had the opportunity to advance

her claims by presenting evidence of her injuries at an evidentiary hearing. . . . [T]herefore she

cannot be deemed to have abandoned or otherwise waived those claims." *Id*. at 517-18. Put

another way, res judicata does not apply until a claimant abandons or waives her claims.

B. Res Judicata as Applied in O'Neil's Case.

Turning now to the matter before us and applying the principles presented above, we

conclude, like the Commission, that res judicata does not apply to bar O'Neil's claims for

injuries to her brachial plexus, neck, collarbone, and left arm. Here we face a similar scenario as

presented in *Craft*, except that O'Neil filed her claim before entering into a voluntary award

agreement with Henrico County. Henrico County presented this appeal to resolve a question that

the Commission has faced since our decision in *Craft*: If a claimant files a claim but enters into

an award agreement before an evidentiary hearing is scheduled on the claim, does res judicata

preclude the claimant from filing additional claims? For four reasons, we conclude that it does

not.

First, like the claimant in *Craft*, O'Neil had not yet presented *all* her claims to the

Commission for adjudication. When the parties signed the award agreement and the deputy

commissioner approved and entered the award, O'Neil had taken no action on the claim and an

evidentiary hearing had not yet been scheduled. Indeed, O'Neil did not request to schedule an evidentiary hearing until about eight months after entry of the agreement award. And when her request to continue the first scheduled evidentiary hearing was denied, O'Neil withdrew her claims and filed a new claim for benefits that included the original unresolved injury claims from her original filing.

Henrico County argues that under *Craft*, O'Neil's act of filing the initial claim for benefits triggers the application of res judicata principles to bar her from further relief. We find this an incongruous interpretation of the case. *Craft* does not hold that filing a claim always triggers res judicata; it holds that res judicata cannot be triggered *before* a claim is filed. *See Craft*, 63 Va. App. at 517-18 ("As Craft had not yet filed a claim with the [C]ommission at the time of the award agreement and the subsequent entry of the award order, there were no claims pending with the [C]ommission that could later be barred by the principles of res judicata."). Simply filing a claim and then signing an award agreement does not trigger res judicata.

Second, O'Neil neither waived nor abandoned her injury claims related to her brachial plexus, neck, collarbone, and left arm. Although she pursued her claims, O'Neil's case never progressed to an evidentiary hearing. And despite entering into an award agreement, she never "represent[ed] that the agreement forms resolve the claims." Nor do we find O'Neil's action in signing the award agreement constitutes her intentional relinquishment of her right to claim additional injuries before submission of her claim for adjudication. *Cf. Binswanger Glass Co. v. Wallace*, 214 Va. 70, 74 (1973) (holding that the voluntary execution of a supplemental memorandum of agreement and the voluntary payment of compensation after the statutory time limitation for compensation constituted waiver by the employer of right to enforce time bar).

The award agreement did not notify O'Neil that by signing it she would be precluded from claiming additional injuries. And, since *Craft*, the Commission has continually allowed

- 10 -

claimants to file a claim, sign an award agreement resolving some injury claims, and file new or additional claims for unresolved injuries. *See Williams v. Drug Transp. Inc.*, JCN VA00000553371, slip op. at 1-2 (Va. Workers Comp. Comm'n Jan. 16, 2014), *aff'd*, No. 1790-14-2 (Va. Ct. App. Feb. 18, 2015)[4]; *Clute v. Big Lots Stores, Inc.*, JCN VA00000420654, slip op. at 4 (Va. Workers Comp. Comm'n June 5, 2014), *aff'd*, No. 0206-15-2 (Va. Ct. App. June 9, 2015); *Lumpkin v. Amerigas Propane*, JCN VA00000485920, slip op. at 6 (Va. Workers Comp. Comm'n Feb. 27, 2014); *Hall v. Structural Concrete Products, Inc.*, JCN VA00000662154, slip op. at 4 (Va. Workers Comp. Comm'n Apr. 28, 2015). A claimant does not, by merely signing an award agreement to resolve some injury claims, knowingly or intentionally waive her rights for claims not addressed by the agreement. Instead, a claimant's intent to waive or abandon her claim must be evident, such as by an explicit waiver provision in the agreement.[5] Therefore we find that O'Neil took no action that constitutes waiver or abandonment of her claims.

Third, and contrary to Henrico County's argument, our decision in *Levy v. Wegman's Food Markets, Inc.*, 68 Va. App. 575 (2018), is inapplicable here. In *Levy*, the Commission,

---

[4] As a policy argument, Henrico County claims that *Williams* discourages employers from entering into voluntary agreements. But Henrico County does not point to any evidence that voluntary settlements have meaningfully decreased since *Williams* was decided. In 2015, the year that this Court affirmed *Williams*, the Commission boasted 5,646 settlements. *See* Virginia's Workers' Compensation Commission, Annual Report 20 (2015). In 2017, two years later, Henrico County and O'Neil entered the award agreement here, one of 5,699 settlements from that year. *See* Virginia's Workers' Compensation Commission, Annual Report 17 (2017). Between 2015 and 2020, the most recent year with reported data, there was no meaningful change in the number of settlements coming from the Commission. *See* Virginia's Workers' Compensation Commission, Annual Report 20 (2015); Virginia's Workers' Compensation Commission, Annual Report 12 (2020). The data does not support Henrico County's argument that employers hesitate to enter into award agreements after *Williams*.

[5] Henrico County hypothesizes that such decision will require future parties to fully litigate each injury claim to fully dispose of a claim. Nothing in our holding here limits the use of explicit waiver provisions in award agreements if the parties find it prudent and the Commission approves.

following an evidentiary hearing on the merits, concluded that one of claimant's injury claims was unsupported by the evidence. 68 Va. App. at 578. The claimant then filed a new claim for the same injury, this time including evidence of her claim. *Id.* at 579-80. On appeal, we affirmed the Commission's holding that her claim was barred by res judicata because her first iteration of the claim was explicitly denied. *Id.* at 584. We held that when medical evidence is considered by the Commission and found wanting, a claimant is precluded from asserting the same claim supported by supplemental medical evidence and considering it a "new" claim. *Id.* (finding that where the Commission previously addressed causation in an evidentiary hearing, "neither the issue of causation nor the evidence . . . may be fairly categorized as 'new'").

*Levy* is readily distinguishable from this case. Unlike O'Neil, the claimant in *Levy* never signed an award agreement, the central document at issue here. Because of that the Commission in *Levy* explicitly considered and denied the claimant's injury claim following an evidentiary hearing. *Id.* at 582. Here, O'Neil merely filed a claim alleging certain injuries. Then, she signed an award agreement. That the award agreement was silent on some injuries is not analogous to the Commission's explicit finding that Levy's claims were unsupported by the evidence. *See id.* O'Neil's case is much more analogous to *Craft*. "[O'Neil] had not yet put all of her injuries at issue before the [C]ommission or[, unlike the employee in *Levy*,] had the opportunity to advance her claims by presenting evidence of her injuries at an evidentiary hearing." *Craft*, 63 Va. App. at 517.

Finally, we are persuaded that the same public policy considerations recognized in *Craft* apply equally here, so that a claim not otherwise waived or abandoned may not be barred by res judicata before an evidentiary hearing. Because the Workers' Compensation Act "encourages the voluntary settlement of claims arising from compensable injuries," strict application of res

judicata would contradict that purpose, allowing award agreements to become a "blanket release" for latent injuries or uncertain diagnoses. *Id.* at 518. Then

> employees would have to ensure that those agreements covered *all* of the potential injuries resulting from their work-related accidents. . . . The increased diligence . . . coupled with uncertain medical diagnoses and potentially latent injuries would discourage the voluntary settlement of claims in many cases. In turn, the efficient administration of the Act would be jeopardized as more claims would be fully litigated, even when the parties of the case were in agreement concerning some injuries involved in the claim.

*Id.* Additionally, the Commission would have to closely scrutinize each agreement because some claimants may feel pressured to abandon their long-term interests in favor of partial awards. *Id.* at 519. And the Act requires that the Commission only approve agreements in the best interest of the employee. *Id.*; Code § 65.2-701(A). To subvert *Craft* now and adopt a less "tailored" application of res judicata in workers' compensation cases would be to disregard the policy considerations underpinning the Workers' Compensation Act and degrade the Commission's charge to promote settlements that are in the best interest of the employee.[6] Thus, we decline to do so here.

The Commission did not err in finding that O'Neil's claims were not barred by res judicata.

## II. The Commission did not violate Henrico County's right to due process.

On December 23, 2019, counsel for O'Neil wrote to the Commission explaining that he had three active cases in which the scope of res judicata was the primary issue. He effectively requested that the Commission hold its ruling on this case until after oral argument in *Viera Lazo v. Wholesome Energy LLC*. O'Neil's counsel also proposed that the Commission hear oral argument from Henrico County's counsel, as part of the *Viera Lazo* case. The Commission

---

[6] We note that Code § 65.2-706.2 was enacted after the Commission's final order and it was not briefed by the parties. We therefore do not consider it here.

agreed to reserve judgment until after the *Viera Lazo* oral argument but declined to hear oral argument from Henrico County as part of those separate proceedings.

Henrico County asserts that its procedural due process rights were violated when the Commission "decid[ed] the case, in part based upon the outcome of an oral argument at which the defendants were not afforded the opportunity to be heard." "Whether a person has been deprived of due process is a question of law" that we review de novo. *Bragg Hill Corp. v. City of Fredericksburg*, 297 Va. 566, 585 (2019).

We find that Henrico County's procedural due process rights were not violated.[7] Henrico County points to no authority that states individuals have the right to present oral argument at a case in which the individual's only interest is the development of the law. The Commission's rules also make it clear that only parties to an action may present oral argument. *See* Va. Work. Comp. Comm. R. 3.4 ("If oral argument is requested and the Commission considers it necessary or of probable benefit to the parties or to the Commission in adjudicating the issues, *the parties* will be scheduled to present oral argument." (emphasis added)). "Our Supreme Court has identified 'the minimum requirements of constitutional due process which must attend administrative hearings: timely and adequate notice, the right to confront adverse witnesses and present one's own evidence, the right to the assistance of retained counsel, and an impartial decision-maker.'" *Virginia Bd. of Medicine v. Zackrison*, 67 Va. App. 461, 482-83 (2017) (quoting *Hladys v. Commonwealth*, 235 Va. 145, 147 (1988)).

---

[7] Although we have previously addressed procedural due process claims from local governments in the workers' compensation context, we have not discussed whether a local government indeed has due process rights. Here we assume without deciding that Henrico County is entitled to certain due process protections. *See Henrico v. Taylor*, 34 Va. App. 233, 236 (2001); *Nelson Cnty. Schs. v. Woodson*, 45 Va. App. 674, 677 (2005). *But cf. City of Trenton v. State of New Jersey*, 262 U.S. 182, 188 (1923).

As a party to this proceeding, Henrico County presented its arguments to the Commission by filing briefs in connection with this case. The County was afforded an opportunity to be heard. Under the procedural due process standard set to the Commission, that is sufficient. *See Taylor*, 34 Va. App. at 243 ("Even though workers' compensation proceedings may be more informal than judicial proceedings, "the [C]ommission must use procedures that 'afford the parties minimal due process safeguards.'" (quoting *WLR Foods, Inc. v. Cardosa*, 26 Va. App. 220, 243 (1997))).

III. <u>The Commission did not err in finding that the accident caused O'Neil's injuries.</u>

We "consider[] the evidence in the light most favorable to the prevailing party." *Smith-Adams v. Fairfax Cnty. Sch. Bd.*, 67 Va. App. 584, 590 (2017). "Factual findings of the [C]ommission will not be disturbed on appeal unless plainly wrong or without credible evidence to support them." *Id.* (quoting *Ga. Pac. Corp. v. Dancy*, 17 Va. App. 128, 135 (1993)). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." *Id.* (quoting *Wagner Enters., Inc. v. Brooks*, 12 Va. App. 890, 894 (1991)). "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the [C]ommission's findings, they will not be disturbed on review." *Id.*

Henrico County asserts that the Commission could not have found that the claimant's injuries were causally related to the workplace accident because a medical expert did not affirmatively find causation. But the Commission is not required to rely exclusively on an expert finding of causation. Instead, "where 'the [medical] reports reflect only the results of claimant's physical examination and do not purport to establish the cause or causes of her injury[,] . . . the [C]ommission [is] free to credit claimant's testimony at the hearing as a basis for its finding of

- 15 -

causation.'"[8] *See Strictly Stumps, Inc. v. Enoch*, 33 Va. App. 792, 795 (2000) (quoting *Dollar Gen. Store v. Cridlin*, 22 Va. App. 171, 177 (1996)).

In *Enoch*, the claimant testified that he was injured when a tree fell on his right foot on September 1, 1997, and that he experienced intermittent pain in the foot before seeking treatment about a year later, on August 30, 1998. *Id.* at 794. A witness for the employer remembered that a tree fell on the claimant in "early September 1997," and that the claimant said his foot hurt after the tree fell on it. *Id.* Another witness saw the tree fall but testified that it fell on the claimant's left foot. *Id.* The written materials from the claimant's healthcare providers noted the incident from 1997 and provided no alternative theories of causation. *Id.* at 796. The Court found that this evidence was sufficient to prove that the fallen tree caused the foot injury. *Id.*

Here, O'Neil's testimony establishes that her pain began after the lieutenant punched her in the neck. After the punch, she experienced pain in her jaw, left arm, collarbone, and neck. There is a logical causal relationship between a punch in the neck and immediate pain in the neck and surrounding body area. Multiple reports from various doctors reference the workplace incident and do not provide alternative theories of causation. O'Neil did not testify regarding any intervening causes or complications, such as a prior or subsequent injury history. The set of facts is strikingly similar to the evidence that we deemed sufficient to prove causation in *Enoch*. *See id.* at 794. Under these circumstances, the causal link was not only logical, but it was also obvious. Thus, the Commission was free to credit O'Neil's testimony that the workplace

---

[8] Henrico County argues that *Enoch* requires medical experts to establish causation where a medical diagnosis is complex. That argument mischaracterizes *Enoch*, which held that medical experts must establish causation when medical *causation* is complex. *See Enoch*, 33 Va. App. at 796. Although *Enoch* states that "[t]he record in this case does not establish that the medical issue was so complex that the [C]ommission made findings in an area that could only be properly decided by medical experts," the context of the opinion makes it clear that medical experts must establish causation only where the issue of causation is medically complex. *See id.*

accident caused her injuries.  The Commission's finding was supported by credible evidence, and we will not disturb it on appeal.

## CONCLUSION

Based on the foregoing reasons, we affirm the judgment of the Workers' Compensation Commission.

*Affirmed.*