COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Ortiz and Senior Judge Annunziata
Argued at Fairfax, Virginia

UNPUBLISHED

EN & SH PROPERTIES, LLC, ET AL.

v.      Record No. 1421-22-4

MILTON GRISTO

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
OCTOBER 24, 2023

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> J. David Griffin (Winchester Law Group, P.C., on briefs), for
> appellants.
>
> Jose Caballe (Daniel P. Barrera; The Barrera Law Firm, on brief), for
> appellee.

EN & SH Properties, LLC, and its insurer, Flagship City Insurance Company, (appellants) appeal an order of the Workers' Compensation Commission entering an award against them for Milton Gristo's (claimant) temporary total disability wage loss and medical benefits. Asserting res judicata, appellants assign error to certain findings of the Commission that they claim are contrary to findings made by a deputy commissioner in a final opinion resolving a show cause order. Appellants also assert that the Commission erred in failing to find that claimant engaged in willful misconduct, in awarding lost time benefits without sufficient evidence of disability, and in finding sufficient evidence to award an average weekly wage. Lastly, appellants allege that the Commission erred in finding EN & SH Properties was the statutory employer yet stripping its ability to pursue subrogation against claimant's employer.

---

[*] This opinion is not designated for publication. *See* Code § 17.1 413(A).

BACKGROUND

On appeals from the Commission, "we review the evidence in the light most favorable to the prevailing party"; here, the claimant. *R.G. Moore Bldg. Corp. v. Mullins*, 10 Va. App. 211, 212 (1990). On August 22, 2018, claimant was working for his brother-in-law, Elder Miguel Espina, who owned Miguel's Carpentry. EN & SH Properties hired Miguel's Carpentry to do framing for the construction of Valley Extended Suites hotel.

Around lunchtime on August 22, claimant was walking around the construction site and talking on his cell phone. He was talking to Espina, who was home for lunch, telling him that one of the workers wanted to quit and this was impacting their ability to finish the job. While they were talking, claimant walked on an inclined "2x12" board that was a makeshift walkway from the ground to an upper level of the building they were constructing. Claimant fell off the board, about eight to ten feet into the foundation of the hotel. After the fall, an ambulance took claimant to Augusta Health Hospital. From there he was transported to UVA Medical Center. Claimant sustained injuries to his left knee and right ankle and underwent three surgeries during his hospital stay at UVA, from August 22, 2018, through September 9, 2018.

Claimant filed a claim for benefits on March 9, 2020, against Miguel's Carpentry. Miguel's Carpentry was not covered with workers' compensation insurance. The Commission also ordered Miguel's Carpentry to show cause why it should not be fined for failure to insure its liability for workers' compensation benefits. The Commission held a hearing on the show cause order on December 9, 2020. In an opinion dated January 14, 2021, Deputy Commissioner Culbreth found that Miguel's Carpentry was not required to carry insurance under the Workers' Compensation Act. According to the opinion, Espina testified that he had only one employee,

Ruven Lorenzo Garcia,[1] he rarely had enough work for more than one employee, and he sometimes brought on other subcontractors to assist him for larger jobs. Espina stated that "he is primarily a framer and anyone else he would bring to assist would only be brought on a job to assist with framing." He testified that he has never had more than three employees. He also testified that he was aware of claimant's injury when he was being paid to collect garbage at a worksite.

The January 2021 opinion stated the issue as, "Whether a fine is appropriate for failure to insure." It noted that an employer must have three or more employees to come under the jurisdiction of the Act. The deputy commissioner found that "where, as in the present case, the addition of workers could best be classified as sporadic or occasional rather than recurrent, the employer cannot be said to come under the jurisdiction of the Act and thereby required to have insurance." Espina was not fined, and the show cause was quashed. The order was not appealed.

Meanwhile, the Uninsured Employers Fund ("UEF") discovered that EN & SH Properties could be the statutory employer, and EN & SH Properties and its insurer were added as defendants. On December 11, 2020, the Commission entered an agreed order resolving that EN & SH Properties is the statutory employer and dismissing the UEF. The order expressly preserved any defenses of EN & SH Properties.

On May 12, 2021, the parties appeared before the deputy commissioner for a hearing on claimant's claim seeking an award of medical benefits and temporary total disability benefits from August 22, 2018, through September 9, 2018. The parties stipulated that claimant sustained injuries to his left knee and right ankle on August 22, 2018, and that EN & SH Properties was

---

[1] The transcript of the show cause hearing is not in the record. These statements of Espina's testimony are taken from the January 2021 opinion on the show cause matter.

claimant's statutory employer. There was no agreement as to the average weekly wage of claimant.

Claimant called Espina to testify as an adverse witness. Espina testified that his work is primarily "framing work." He stated that claimant worked for him since 2016 and "he would help me do framing, but most of the time was picking up garbage." He also testified that "sometimes I would give [claimant] a job" and pay him $10 per hour, or $100 per day. Espina testified that he told claimant what time to be at work, provided tools to claimant for work, corrected his work, and directly supervised claimant. When asked if he could fire claimant, Espina replied, "No, no. He was just helping me temporarily."

For the framing of the second and third floors of the hotel, Espina testified that he had four workers helping with the framing project, including claimant. Espina worked on the Valley Extended Suites project for three months, and at the very end, only one employee was working for him there. Espina did not recall anyone from EN & SH Properties telling him that the board from which claimant fell could not be used as a walkway. Espina testified that the workers were all trying to get themselves and their tools from the ground up to the floor where they were working and that the board "was to cross."[2]

Claimant testified that he began working at the Valley Extended Suites project on the first day that Espina started working there and that he was working as a framer on the day of the accident. He did not know how long the job was supposed to last. He stated that Espina paid him $100 per day in cash, set his hours including arrival and departure time, supervised him, corrected him, and provided tools for his work. He also said Espina could have fired him. On cross-examination, claimant testified that he does a lot of painting for work, but on the day of the accident he was working as a framer. Claimant stipulated that he had no pay records, receipts of

---

[2] The testimony took place with the assistance of an interpreter.

payments, or tax returns to document his average weekly wage. He also stipulated that there were no "direct slips" saying he was out of work but noted that he limited his claim to temporary total disability benefits to the time medical records show he was hospitalized.

The defense called witnesses Daniel Mansour and Ed Mansour, who manage EN & SH Properties. They both testified that they saw claimant fall off the board and that when he fell, he was talking on his cell phone. Ed testified that before claimant's fall, he had told Espina and all of Espina's employees that using the board as a bridge or walkway was not allowed and to walk around the building and use the stairs, but he noted that the employees did not understand English well. He also testified that he told Espina that if his workers continued to use the board as a walkway, he would not be allowed to finish the job. Ed also stated that he took the board off the site and had his son cut it in half in order to prevent its use, but the workers would get another board a couple days later and use it the same way. The 2x12 boards were job site materials, and workers continued to use it as a walkway/bridge for six to eight weeks, despite Ed's warnings and taking down the board. The workers stopped using the board for ingress and egress only after claimant's accident.

The deputy commissioner issued an opinion on August 12, 2021. He found that claimant was not an employee for the purposes of the Act—he was, "at best, a casual employee." He denied an award to claimant. Claimant appealed to the full Commission.

The full Commission issued an opinion on the record on February 2, 2022. The Commission found that claimant was not just a casual employee but was employed in the usual course of the trade, business, and occupation of Miguel's Carpentry and that claimant was an employee of the statutory employer, EN & SH Properties. Thus, the Commission ordered the August 2021 opinion reversed and remanded the case to the deputy commissioner to address the employer's remaining defenses.

Accordingly, on April 8, 2022, the deputy commissioner issued an opinion addressing the employer's remaining defenses, finding no willful misconduct, that medical evidence proved claimant was hospitalized for the period claimed of total disability so the award period was appropriate, and the issue of marketing was moot. EN & SH Properties appealed. On August 29, 2022, the full Commission affirmed the award against EN & SH Properties and Flagship City Insurance Company of $333.34 per week during the period of temporary total disability beginning August 29, 2018, through September 9, 2018, and medical benefits for as long as necessary. EN & SH Properties appealed to this Court.

ANALYSIS

I. Res judicata

Appellants argue res judicata principles preclude the Commission from having jurisdiction over claimant's claim. "Whether a claim or issue is precluded by res judicata principles is a question of law which we review de novo." *Levy v. Wegmans Food Mkts., Inc.*, 68 Va. App. 575, 579 (2018).

First, appellants assert that the deputy commissioner found in the January 2021 opinion that claimant's employer, Miguel's Carpentry, did not fall within the jurisdiction of Virginia's Workers' Compensation Act and therefore it had no jurisdiction to award benefits to claimant. Appellants state Code § 65.2-101(2)(h) excludes from the Act's coverage employees of a person or company that has regularly in service less than three employees. Appellants also argue that the deputy commissioner found that claimant's work was "sporadic or occasional rather than recurrent," and based on this finding he is a "casual employee" who is not covered by the Act, citing Code § 65.2-101(2)(e).[3]

---

[3] Code § 65.2-101(2)(e) states that "'Employee' shall not mean: . . . Casual employees."

Appellants' conclusion overlooks the Act's provisions regarding "statutory employer[s]" found in Code § 65.2-302. "In 1991, . . . the General Assembly enacted Code § 65.2-302, which created a new category of employment relationship called 'Statutory employer.'" *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 90 (2019). Code § 65.2-302(B) provides:

> When any person (referred to in this section as "contractor") contracts to perform or execute any work for another person which work or undertaking is not a part of the trade, business or occupation of such other person and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under the subcontractor of the whole or any part of the work undertaken by such contractor, then the contractor shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if that worker had been immediately employed by him.

"Thus[,] the subcontractor's employees are employees of the contractor for purposes of liability." *Smith v. Weber*, 3 Va. App. 379, 381 (1986) (interpreting now repealed Code § 65.1-30). "Since they are the contractor's employees for purposes of determining liability, reason dictates that they should also be considered employees for determining applicability of the Act." *Id*. Therefore, the fact that Miguel's Carpentry was found to have less than three employees did not decide the question of whether claimant may be covered under the Act.

Regarding the res judicata claim that jurisdiction over EN & SH Properties is precluded, the January 2021 opinion was issued after a hearing to resolve a show cause order where the only issue was whether Miguel's Carpentry should be fined for failure to insure with workers' compensation coverage. The deputy commissioner found that Miguel's Carpentry was not required to have a policy of insurance under the Act because Miguel's Carpentry had less than three employees. Res judicata includes the distinct concepts of issue preclusion and claim preclusion. *County of Henrico v. O'Neil*, 75 Va. App. 312, 322 (2022). "Issue preclusion, also referred to as 'collateral estoppel,' precludes the same parties from re-litigating 'any issue of fact

actually litigated and essential to a valid and final personal judgment in the first action.'" *Id.* (quoting *Brock v. Voith Siemens Hydro Power Generation*, 59 Va. App. 39, 45 (2011)). This Court has held that the principles of res judicata apply to workers' compensation cases, yet res judicata may have to give way when in irreconcilable conflict with more important public policies such as reaching equitable results in workers' compensation cases. *Id.* at 322-23.

Here, issue preclusion or collateral estoppel does not demand a finding that claimant was only a casual employee and thus not covered by the Act. Although the January 2021 opinion stated that "the addition of workers could best be classified as sporadic or occasional rather than recurrent" with regard to Miguel's Carpentry, the issue of whether claimant was an employee of Miguel's Carpentry was not a fact actually litigated that was essential to the show cause dismissal.

In the second assignment of error, appellants assert that the deputy commissioner found in the January 2021 opinion that claimant was not engaged in the carpentry trade and thus the Commission was estopped from later finding that claimant was employed as a carpenter within the usual course of trade of Miguel's Carpentry. Appellants cite the definition of "Employee" in Code § 65.2-101, excluding "one whose employment is not in the usual course of the trade, business, occupation or profession of the employer." However, the deputy commissioner made no determination in the show cause opinion about whether claimant was engaged in the carpentry trade. We note the deputy commissioner's summary of Espina's testimony: "[Espina] was aware of an incident where his brother-in-law was being paid to collect garbage at a worksite . . . ." This, however, is a summary of testimony and not a finding regarding the nature of claimant's work that was litigated and essential to final judgment on the show cause. Thus, this statement would not preclude the Commission from finding that claimant was engaged in carpentry or framing work at the time of his injury.

In their third assignment of error, appellants again assert that res judicata bars the Commission from finding that claimant was an "employee" under the Act after the deputy commissioner's determination that Espina's testimony at the show cause hearing was "credible." While it is true that the deputy commissioner stated in its January 2021 opinion that Espina's testimony was "credible" and found that he did not have three or more employees to bring his company under the jurisdiction of the Act, the deputy commissioner did not make a finding that Claimant was a casual employee or otherwise not covered by the Act.

In sum, nothing in the January 2021 opinion expressly addresses whether *claimant* falls within the statutory definition of employee or was a "worker" for the statutory employer within Code § 65.2-302(B), or states that the Commission has no jurisdiction over his claim. Even if the text of the opinion could arguably bear the construction appellants assert in these assignments of error, "the full commission nonetheless 'is entitled to interpret its own orders in determining the import of its decisions' for purposes of *res judicata*." *Brock*, 59 Va. App. at 48. Here, the full Commission declined to interpret the January 2021 opinion resolving a show cause order as deciding that claimant was not entitled to workers' compensation coverage. We find no error in the Commission's conclusion.

II. Evidence supports the Commission's findings

Next, appellants assert that the Commission erred in its factual findings regarding whether claimant willfully violated a safety rule, proved temporary total disability, and proved average weekly wage. "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding." *Advance Auto and Indem. Ins. Co. of N. Am. v. Craft*, 63 Va. App. 502, 520 (2014) (internal quotation marks omitted) (quoting *Amelia Sand Co. v. Ellyson*, 43 Va. App. 406, 408 (2004)).

A. Violation of a safety rule

Appellants argue the Commission erred when it found that claimant did not violate a safety rule.[4]

Code § 65.2-306(A)(5) states that no compensation shall be awarded to the employee for an injury caused by the employee's "willful breach of any reasonable rule or regulation adopted by the employer and brought, prior to the accident, to the knowledge of the employee." The person or entity asserting this defense has "the burden of proof with respect thereto." Code § 65.2-306(B). "To establish this defense, the employer must prove: (1) the rule was reasonable; (2) the employee knew of the rule; (3) the rule was for the employee's benefit; and (4) the employee intentionally performed the forbidden act." *Dan River, Inc. v. Giggets*, 34 Va. App. 297, 302 (2001); *see also Layne v. Crist Elec. Contractor, Inc.*, 64 Va. App. 342, 349-50 (2015). "[T]he employee may rebut the defense by showing that the rule was not kept alive by bona fide enforcement or that there was a valid reason for his inability to obey the rule." *Buzzo v. Woolridge Trucking, Inc.*, 17 Va. App. 327, 332 (1993).

The Commission found that neither the statutory employer nor the direct employer adopted a safety rule prohibiting the use of the 2x12 board as a walkway and that the evidence does not establish that any such rule was known to claimant. Only the Mansours testified to the safety rule and that they told Espina and claimant not to use the board. Ed Mansour stated that he took the board down multiple times only to find it replaced by the workers. He testified that he told Espina that they could not continue working there if the workers continued to use the

---

[4] Code § 65.2-306 provides employers' defenses based on employee's conduct. Within this statute, the Commission only addressed whether claimant committed a willful *violation of a safety rule* as defined in Code § 65.2-306(A)(5), and not whether he committed willful *misconduct* as defined in Code § 65.2-306(A)(1), because it found that appellants had waived any argument on the later violation. Therefore, we only address appellants' willful violation of a safety rule defense.

board as a walkway, but apparently the rule and ultimate consequence were never enforced.  As for claimant's awareness of the rule, Ed Mansour acknowledged the language barrier between himself and the workers and that he told the Spanish speaking workers in English not to use the board.  Claimant was not asked at the hearing about his knowledge of the rule.  The record supports the Commission's conclusion that appellants did not meet their burden of proving the existence of a safety rule that was known to claimant.

### B.  Proof of disability

Appellants argue that the Commission erred in awarding claimant "lost time benefits" because no physician ever gave him an out-of-work slip.  Yet the record shows that claimant was hospitalized from August 22, 2018, to September 9, 2018, during which time he underwent three surgeries.  The Commission was "not persuaded by EN & SH Properties' assertion that the claimant could have performed work under these circumstances."  While there are no "out-of-work notes" from medical providers, other medical evidence establishes total disability for the period that claimant was in the hospital.  The Commission did not err in affirming the award of temporary total disability from August 29, 2018, through September 9, 2018.

### C.  Proof of average weekly wage

Appellants contend that the Commission erred in finding evidence to support the computation of claimant's average weekly wage.  Appellants argue that without physical evidence of payments to claimant, the average weekly wage is only speculation and, further, that awards based on speculation promote perjury.  They cite no law that the average weekly wage can only be proven with records or documented evidence.

The claimant bears the burden of persuading the factfinder by a preponderance of the evidence of his average weekly wage. *Thorpe v. Clary*, 57 Va. App. 617, 626 (2011).  Here, claimant claimed an average weekly wage of $500.  He testified that Espina paid him $100 per

day. Espina also testified that he paid claimant $100 per day in cash. Although there was no documentation of Espina's cash payments to claimant, nothing in the record contradicts the testimony that he was paid $100 per day.

Ed Mansour testified that Miguel's Carpentry team was onsite working five days a week, although he stated he saw claimant onsite "[a]bout twice a week. Sometimes three days a week." Daniel Mansour testified that Espina would sometimes pull his workers from the jobsite to go do different jobs. Espina and claimant testified that Espina set the hours for claimant. This evidence supports a reasonable inference that at the time of the injury claimant was working for Espina five days a week, whether at the Valley Extended Suites project or at another jobsite, and that claimant's pre-injury average weekly wage was $500. We find no error in the Commission's finding on claimant's average weekly wage.

### III. Subrogation claim

Finally, appellants assert that "[t]he Commission erred in determining that EN & SH Properties was the responsible statutory employer obligated to pay the Claimant yet stripping this party of its abilities to pursue subrogation against the Employer." Appellants add that the Commission has determined it has no jurisdiction over this claim and therefore cannot "resurrect" the claim to award benefits, forcing EN & SH Properties to pay claimant's benefits while divesting them of subrogation rights against Miguel's Carpentry.

First, the Commission did not determine that it has no jurisdiction over the case or claim. The deputy commissioner only found in the January 2021 opinion that the Commission had no jurisdiction over Miguel's Carpentry, as stated above. The Workers' Compensation Act clearly provides jurisdiction over EN & SH Properties as the statutory employer. *See* Code § 65.2-302(B).

Second, there was no actual subrogation claim before the Commission.[5] The Commission addressed this argument in a footnote in the February 2022 opinion and stated that it had made no determination regarding any subrogation rights of appellants and their argument "raises a purely hypothetical question that is not ripe for review." We find no error in the Commission's determination that the issue is not ripe for review as no subrogation claim was before the Commission.

For the foregoing reasons, the Commission's ruling is affirmed.

*Affirmed.*

---

[5] Code § 65.2-304 provides that a principal contractor who is found liable to pay compensation under Code § 65.2-302 or Code § 65.2-303 "shall be entitled to indemnity from any person who would have been liable to pay compensation to the worker independently of such sections . . . and shall have a cause of action therefor."